75 N.J. 62 (1977)
379 A.2d 848
VINCENT TOMARCHIO, PETITIONER-RESPONDENT,
v.
TOWNSHIP OF GREENWICH, RESPONDENT-APPELLANT.
The Supreme Court of New Jersey.
Argued May 24, 1977.
Decided November 3, 1977.
*65 Mr. William W. Summers argued the cause for appellant (Messrs. Kisselman, Deighan, Montano & Summers, attorneys).
Mr. Angelo J. Falciani argued the cause for respondent (Messrs. Falciani & DiMuzio, attorneys).
The opinion of the court was delivered by HANDLER, J.
Petitioner Vincent Tomarchio filed a dependency claim for workers' compensation death benefits under N.J.S.A. 34:15-13 against respondent Township of *66 Greenwich alleging that he was the widower and sole dependent of Carmella Tomarchio, who sustained a fatal compensable accident on December 20, 1972. The Township admitted employment connection but denied that petitioner was a dependent of the deceased.
Following a hearing in the Division of Workers' Compensation, a Judge of Compensation found the dependency provision, N.J.S.A. 34:15-13(f), unconstitutional as violative of equal protection in that it affords widows a conclusive presumption of total dependency but requires widowers to prove their dependency. The judge held that equality of treatment requires the conclusive presumption of dependency be extended to widowers and ordered that petitioner receive compensation as a total dependent. The judge further concluded that the gender-based distinction with respect to the period of compensation under N.J.S.A. 34:15-13 was discriminatory and ordered that the duration of petitioner's compensation be governed by the provisions applicable to widows. In the alternative, the judge found that petitioner was actually dependent upon the earnings of decedent and was entitled to compensation as a partial dependent under the statutory standard applicable to widowers. In computing the basis for the death benefit award, the judge combined earnings from decedent's employment with the Township and another separate, part-time job while excluding any consideration of the value of decedent's services as a homemaker.
An appeal from the judgment entered was taken by the Township, and this Court, on its own motion, certified the appeal then pending unheard in the Appellate Division. 71 N.J. 518 (1976). The foremost issue on appeal is whether the differential treatment of widows and widowers under N.J.S.A. 34:15-13 is unconstitutional as violative of equal protection. Subsidiary issues include the effect of decedent's multiple employments and homemaking services on the computation of the compensation award.

*67 I.
The Workers' Compensation Act prescribes differential treatment for widows and widowers who seek death benefits under N.J.S.A. 34:15-13. The statute provides that the term "dependents" encompasses one who is a husband or a wife of a deceased worker at the time of death but that "[d]ependency shall be conclusively presumed as to the decedent's widow * * *." N.J.S.A. 34:15-13(f). A widower, however, must prove dependency upon his deceased spouse. Furthermore, while this conclusive presumption entitles a widow to compensation as a total dependent, widower benefits are correlated to the degree of dependency that existed at the time of death. N.J.S.A. 34:15-13(f). Moreover, compensation is payable to a widower for 450 weeks, but to a widow for the entire period of widowhood. If a widow remarries, however, she is entitled to receive compensation still otherwise due her or $1,000, whichever is less (N.J.S.A. 34:15-13(f)); and if she should become employed after 450 weeks, earnings from employment are deducted from the compensation payable to her (N.J.S.A. 34:15-13(j)).
Petitioner contends that this statutory scheme differentiating between widows and widowers violates the Equal Protection Clause of the Fourteenth Amendment. In addressing this contention, the test to assess the validity of statutory differences in treatment predicated on sex under the Equal Protection Clause is whether the differential classification is related substantially to the achievement of an important governmental objective. It is a test fashioned by the United States Supreme Court in several recent cases. E.g., Califano v. Goldfarb, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977); Weinberger v. Wiesenfeld, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); compare Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); see also Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); Reed v. Reed, *68 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); Gunther, "Forward: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection," 86 Harv. L. Rev. 1, 20-24 (1972).
Califano v. Goldfarb, supra, is especially apposite since the Court considered the distribution of survivors' benefits under the Social Security Act and invalidated a differential dependency requirement analogous to that found in our Workers' Compensation Act. The challenged sections provided that benefits derived from the earnings of a deceased husband are payable to his widow regardless of dependency but a widower was required to prove that he was at least one-half dependent upon his deceased wife in order to receive benefits. These differential dependency provisions, according to the Court, failed in any significant or substantial way to achieve an important governmental purpose and resulted in invidious discrimination.
Weinberger v. Wiesenfeld, supra, relied upon extensively by the Court in Goldfarb, is similar. Plaintiff attacked the statutory section which provided Social Security survivor's benefits to widows but not to widowers caring for children of a deceased wage earner. The Court could find no redeeming grace for the gender-based distinction since it actually disserved the female wage earner by depriving her of the protection accorded men, and even placed a male survivor with children to raise at a comparative disadvantage. As important, it treated children unequally depending upon whether their mother or father was the surviving parent. In concluding that the classification based on sex offended equal protection, the Court found these disparate benefits to be virtually indistinguishable from the statutory scheme considered in Frontiero v. Richardson, supra, where the Court invalidated statutory provisions which enabled a serviceman to claim his wife as a dependent regardless of her actual dependency, but required a servicewoman seeking similar benefits to prove that her husband was actually dependent upon her for more than one-half of his support.
*69 In the light of these cases, it would appear essential to assure equal protection under the Constitution that the purposes of a statutory plan based upon differences in sex be thoroughly and cautiously scrutinized to ascertain the genuine objective of the legislation and that there be a critical evaluation of whether the differentiation based upon sex materially advances the legislative goal. Indeed, four members of the Court in Frontiero were more emphatic and punctilious in their articulation of the proper confrontation of an equal protection claim based on sex discrimination, expressing the view that sex-based distinctions are "inherently suspect" and should be gauged by a standard of "strict scrutiny." 411 U.S. at 682, 93 S.Ct. at 1768, 36 L.Ed.2d at 589. Thus, in assessing the constitutional sufficiency under equal protection strictures of sex-based classifications, we conceive that the judicial approach must be scrupulous and skeptical, and the court must be satisfied completely that there is an important governmental objective which is substantially advanced by gender-based classification. Craig v. Boren, supra.[1]
*70 Two state courts have recently applied these principles to invalidate proof of dependency requirements imposed on widowers under their respective workers' compensation statutes. Arp v. Workers' Comp. Appeals Bd., 19 Cal.3d 395, 138 Cal. Rptr. 293, 563 P.2d 849 (Sup. Ct. 1977); Passante v. Walden Printing Co., 53 A.D.2d 8, 385 N.Y.S.2d 178 (App. Div. 1976). In Arp, the Supreme Court of California found the conclusive presumption of dependency afforded widows who sought death benefits, when contrasted with the proof of actual dependency required of widowers, to be discriminatory. The court held that, at the level of the wage earner, the statute denies a female employee the same protection that a male worker receives for his spouse. 19 Cal.3d at 406-407, 138 Cal. Rptr. at 299-300, 563 P.2d at 855-856. The court also found the statute to impose an impermissible burden on the surviving widower from which the surviving widow was free. Id. Similarly, the court in Passante, noting that workers' compensation death benefits are derived from the employment relationship itself, said that "whereas the working man * * * is given the security of knowing that in the event of his work-related death, his widow * * * will not suffer the loss of his entire income, the working woman is given no such guarantee." 53 A.D.2d at 11, 385 N.Y.S.2d at 180. With respect to women as beneficiaries, the court found that the presumption of dependency lacked a valid basis since a substantial number of married women are employed or financially independent. Id.
Ranged against this authority and in support of its position, the Township cites Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974). There the Supreme Court upheld a statute granting widows, but not widowers, an annual $500 property tax exemption. The Court found that the statute had the remedial purpose of cushioning the *71 financial impact of spousal loss, which places a highly disproportionate burden upon widows because of past economic discrimination, and for that reason the Court concluded that the classification was related substantially to the object of the legislation. 416 U.S. at 354-356, 94 S.Ct. at 1737, 40 L.Ed.2d at 192-193.
Unlike the case at bar, Kahn concerned a challenge to a state tax law, an area where the states historically have enjoyed "large leeway." 416 U.S. at 355, 94 S.Ct. at 1737, 40 L.Ed. 2d at 193. More importantly, women qua wage earners were not the concern of the tax legislation. The Court found that the gender-based classification in the tax statute was remedial, designed to rectify past discrimination visited upon women generally, and that its benign purpose was not a subterfuge or mask for heaping indirectly additional economic disadvantages on women. 416 U.S. at 355 n. 8, 94 S.Ct. at 1737 n. 8, 40 L.Ed.2d at 193 n. 8. In contrast, however, a reverse economic incentive, garbed as a simple monetary plus, was placed upon women in the statutory programs invalidated in Goldfarb and Wiesenfeld. Unlike the benefit discerned in Kahn, the statutory schemes in these survivor-allowance cases operated as an economic detriment to the women supposedly helped. In the present case, the decedent Carmella Tomarchio, as a wage earner, has also been subjected to an added economic burden in being denied a benefit of her employment, a workers' compensation award to her surviving spouse, which was otherwise available to a male worker. It was just this kind of "heaping additional economic disadvantages" upon the female wage earner which prompted the Supreme Court's rejection of the Kahn doctrine in Califano v. Goldfarb, supra, 430 U.S. at 209 n. 8, 97 S.Ct. at 1028 n. 8, 51 L.Ed.2d at 278 n. 8, and Weinberger v. Wiesenfeld, supra, 420 U.S. at 648, 95 S.Ct. at 1223, 43 L.Ed.2d at 524-525. See also Arp v. Workers' Comp. Appeals Bd., supra, 19 Cal.3d at 403-405, 138 Cal. Rptr. at 297-298, 563 P.2d at 853-854; Passante v. Walden Printing Co., supra, 53 A.D.2d at 11-13, 385 N.Y.S.2d at 180-181. Cf. Frontiero *72 v. Richardson, supra, 411 U.S. at 689 n. 22, 93 S.Ct. at 1771 n. 22, 36 L.Ed.2d at 583 n. 22.[2] For the same reasons, Kahn does not save the dependency provisions of our Workers' Compensation Act.
We likewise find unpersuasive the additional arguments advanced by the Township. While invidious discrimination was found in Wiesenfeld with respect to the application of Social Security benefits paid for by the female wage earner through Social Security taxes, the actual monetary contribution by the employee to the social insurance plan was not essential to a finding of impermissible discrimination. Wiesenfeld condemned more broadly differential treatment depriving women of the family protection that men receive as a result of their employment. Cf. Frontiero v. Richardson, supra. Further, "administrative convenience," in the sense of facilitating the administration of survivors' awards, cannot be advanced as a viable reason to sustain the conclusive presumption of dependency. Frontiero does not furnish a substantial distinction in this respect merely because private carriers and not the state must bear the expense of claim administration under the Workers' Compensation Act. Finally, the vice of discrimination is not extirpated merely because the dependency provision here at issue, N.J.S.A. 34:15-13(f), affords the widower the opportunity to prove the degree of his actual dependency whereas the provisions invalidated in Wiesenfeld precluded totally the surviving husband from *73 receiving benefits. Arp. v. Workers' Comp. Appeals Bd., 132 Cal. Rptr. 112, 117 (Ct. App. 1976), vacated on other grounds, 19 Cal.3d 395, 138 Cal. Rptr. 293, 563 P.2d 849 (Sup. Ct. 1977); compare the Court's implicit rejection of this doctrine in Califano v. Goldfarb, supra, 430 U.S. at 229, 97 S.Ct. at 1037, 51 L.Ed.2d at 290 (Rehnquist, J., dissenting), and Frontiero v. Richardson, supra, 411 U.S. at 691, 93 S.Ct. at 1773, 36 L.Ed.2d at 594 (Rehnquist, J., dissenting for reasons stated in 341 F. Supp. 201 (M.D. Ala. 1972)).
It is impermissible to employ gender-based distinctions premised upon "archaic and overbroad" stereotypes regarding the economic dependency of women and thus to deny a female wage earner protection for her family equal to that afforded a comparable male wage earner. Weinberger v. Wiesenfeld, supra, 420 U.S. at 643, 95 S.Ct. at 1230-1231, 43 L.Ed.2d at 521-522. In the context of our workers' compensation scheme, the dependency provisions for widows were undoubtedly conceived as a remedial measure to help women overcome economic handicaps. They are based, however, on assumptions of female economic disablement which no longer enjoy currency. The net result of this stock approach is that a married woman's employment does not yield the same benefits which a married man's generates for his surviving spouse and family. Comparing men and women as employees, the ultimate effect of the dependency provisions upon a woman worker is to denigrate the worth of her efforts and shrink the fruit of her labors. From this vantage point, the statutory dependency scheme hurts rather than helps women.
Focusing only upon the status of a surviving spouse as a dependent beneficiary under the Workers' Compensation Act, the differences in treatment are similarly untenable. The statutory policy which requires widowers to prove dependency but allows widows a conclusive presumption of total dependency is premised upon the same discarded stereotypes regarding the economic dependence of women and the *74 economic sufficiency of men. We conclude, therefore, that the proof of dependency requirement imposed on widowers under N.J.S.A. 34:15-13(f) is violative of equal protection.
The momentum of this analysis carries with equal force to the gender-based distinctions governing the duration and computation of compensation benefits under the Workers' Compensation Act. N.J.S.A. 34:15-13(j) and (f). These provisions, together with the conclusive presumption of dependency, are part of the total bundle of benefits which are generated through the employment of a female wage earner. Under our present statutory scheme a widower receives benefits for a limited period of time, 450 weeks. The widow, on the other hand, receives benefits for her entire widowhood, potentially well beyond the 450-week limitation. Should the widow be employed after a period of 450 weeks, however, her weekly award is reduced by the amount of her weekly wage. N.J.S.A. 34:15-13(j). Also, upon remarriage a widow receives either the remaining benefits due her or $1,000, whichever is less. N.J.S.A. 34:15-13(f).
The essential thrust of the differential treatment in N.J.S.A. 34:15-13(j) is to disfavor the widower vis a vis the widow in that the widower is denied benefits for the duration of his widowerhood. In this respect, the female wage earner's employment results in lower death benefits for her survivor than does that of a similarly situated male worker. Weinberger v. Wiesenfeld, supra, 420 U.S. at 645, 95 S.Ct. at 1232, 43 L.Ed.2d at 523. However, under the present statute there are some circumstances where the widower is in a more favored position than the widow as, hypothetically, when a widow receiving substantial benefits remarries long before the end of the 450-week period so that her reduced award of $1,000 may leave her at a relative disadvantage compared to a widower who similarly remarries but continues to receive his compensation award. Compare N.J.S.A. 34:15-13(f) with (j).
*75 Neither disfavoring the widower as in the former situation, nor favoring him as in the latter example, is constitutionally justifiable. If the governmental purpose here is the important one of providing compensation to replace the lost earnings of one's spouse due to his or her work-related death, it is not substantially furthered by denying benefits to a widower throughout his widowerhood, a time when he would be in need of a wife's additional income. By the same token, this objective is not advanced by continuing a widower's benefits notwithstanding his remarriage. Implicit in this legislative approach is the notion that female earnings are insignificant as compared to the earnings of a man, since a new wife's earnings have no effect on the duration of the award, while a new husband's earnings are deemed to supplant those of the deceased worker. These concepts are "archaic and overbroad," Califano v. Goldfarb, supra, 430 U.S. at 217, 97 S.Ct. at 1032, 51 L.Ed.2d at 283; Weinberger v. Wiesenfeld, supra, 420 U.S. at 643, 95 S.Ct. at 1231, 43 L.Ed.2d at 522, and ignore the present economic reality that most spouses are mutually dependent economically and suffer equally upon the economic dislocation resulting from the disruption of their union. In consequence, we must conclude that these provisions affecting the duration and computation of death benefits, constituent parts of the total statutory scheme for surviving spouses, stand on no firmer constitutional ground than the conclusive presumption of dependency afforded widows and withheld from widowers and must therefore share the same fate of unconstitutionality.
Having determined that the statutory treatment differentiating between widows and widowers under the Workers' Compensation Act is unconstitutional, we are satisfied that the remedy fashioned by the compensation judge to rectify the discriminatory features of the statute is appropriate. The judge simply applied the conclusive presumption of dependency to widowers. This was the approach which commended itself to the United States Supreme Court in *76 Frontiero as well as the Social Security cases, Goldfarb and Wiesenfeld. It was also followed in the New York workers' compensation case, Passante v. Walden Printing Co., supra. See generally Note, "Extension Versus Invalidation of Underinclusive Statutes: A Remedial Alternative," 12 Colum. J. Law & Soc. Prob. 115 (1975); but see Arp. v. Workmen's Comp. Appeals Bd., supra, 19 Cal.3d at 408-409, 138 Cal. Rptr. at 300-301, 563 P.2d at 856-857 (extension of conclusive presumption of dependency to widowers not adopted due to clear and specific expression of legislative intent to the contrary).
This remedy is least destructive of the dominant legislative plan in providing dependency benefits. The alternative of imposing a requirement of proof of dependency upon widows would constitute a greater disruption of the statutory scheme, since it would countermand the Legislature's concern for the welfare of the widows of working men. The constitutional dictate entitling widowers to similar solicitude does not require sacrifices by widows. Consequently, the conclusive presumption of dependency under N.J.S.A. 34:15-13(f) should be extended to widowers, a remedy strongly preferable to the total retraction of this presumption for surviving spouses. See, e.g., Carr v. Campbell Soup Co., 124 N.J. Super. 382 (App. Div. 1973) (workers' compensation benefits extended to illegitimate grandchildren to save otherwise unconstitutional statute); Padilla v. Industrial Comm'n, 24 Ariz. App. 42, 535 P.2d 634 (Ct. App. 1975) (workers' compensation statute construed to extend presumption of total dependency to child of a male as well as a female wage earner to avoid finding statute unconstitutional); cf. Petrozzino v. Monroe Calculating Machine Co., 47 N.J. 577 (1966) (extending conclusive presumption of dependency to the children of a deceased female employee for purposes of pension benefits).
The durational requirement and computation of benefits under N.J.S.A. 34:15-13 (f) and (j) presently *77 applicable only to widows should also be extended to widowers. This remedy, applied by the Judge of Compensation below, serves the purpose of equalizing the statutory treatment of widows and widowers, the salient command of the Equal Protection Clause. Thus, the continuation of benefits after 450 weeks, though at a reduced level, for an unmarried widower who is gainfully employed, now applicable only to widows under N.J.S.A. 34:15-13(j), will provide widowers parity of treatment in this respect.
As to the termination of death benefits upon remarriage, admittedly the extension of the provisions (N.J.S.A. 34: 15-13(f) and (j)) to widowers could operate to deprive them of benefits they otherwise might enjoy (see supra). Nevertheless, it reflects the notion that remarriage serves to replace the lost earnings of one's spouse, a concept applicable to men as well as women. It is not likely that the alternative approach, which would enable surviving spouses, widows as well as widowers, to continue to receive benefits without regard to their remarriage, would cleave more closely to the original and basic intent of the Legislature. And the elimination of remarriage as a factor terminating survivor benefits would also undoubtedly entail a substantial cost factor, which should not be advanced as a judicial solution if constitutionally unnecessary.[3]
*78 We thus affirm the remedy of the Judge of Compensation in applying uniformly those dependency provisions of the Workers' Compensation Act to all surviving spouses of deceased workers without regard to whether the claimant is a widow or widower. Further, in order to avoid any possible confusion in the administration of the statute, this decision shall be prospective in its application. See Pascucci v. Vagott, 71 N.J. 40, 50-51 (1976); Neptune City v. Avon-by-the-Sea, 61 N.J. 296, 310-311 (1972); Willis v. Department of Conserv. & Ec. Develop., 55 N.J. 534, 541 (1970).

II.
Although the Compensation Judge did not make this explicit in his opinion, the death benefit award was based on combined earnings from decedent's concurrent but independent employments. Furthermore, the judge excluded any consideration of the value of decedent's services as a homemaker in his computations. The Township objects to the former ruling, the petitioner to the latter.
Decedent held a full-time clerical position with defendant Township of Greenwich and worked one day each weekend in a similar position with John Wanamaker Company. In Maver v. Dwelling Managers Co., 34 N.J. 440, 444-446 (1961), this Court considered the issue of multiple employments and found that both the language and legislative history of N.J.S.A. 34:15-37, which defined "wages," reflect an intent to limit the wage base to the employment of injury except in the instance of concurrent joint employments.
This view is apparently unique to New Jersey. The majority rule is that earnings from concurrent employments are aggregated if the employments are related or similar. A substantial and growing minority of jurisdictions would combine the earnings regardless of the similarity of the employments. See 2 Larson, Workmen's Compensation Law (1976), § 60.31 at 10-401 to 10-408.
*79 The major policy consideration for aggregation of earnings grows out of the situation, unlike the case here at issue, where the injury occurs during a part-time employment and the wage earner also has a full-time job. The argument is that since the statutory benefits are essentially compensation for lost earning capacity, it is unfair to compute the benefit as though the full-time wage earner were only a part-time employee. See American Uniform & Rental Serv. v. Trainer, 262 So.2d 193, 194 (Fla. Sup. Ct. 1972); 2 Larson, supra, § 60.31 at 10-425. Our statutory scheme protects against this unfairness to an extent by compensating a part-time employee not on the basis of his actual wage but rather on the basis of a constructed weekly wage which considers "* * * the customary number of working hours constituting an ordinary day in the character of the work involved" and prescribes five days as the minimum work week. N.J.S.A. 34:15-37. See, e.g., Maver v. Dwelling Managers Co., supra, 34 N.J. at 442-443, 447-448; Mahoney v. Nitroform Co., 20 N.J. 499, 508-510 (1956); Engelbretson v. American Stores, 49 N.J. Super. 19 (App. Div. 1957), aff'd o.b. 26 N.J. 106 (1958). Consequently, the award must be modified so that it is based only upon the annual salary to which decedent was entitled from the Township of Greenwich, the employment of injury.
Petitioner complains that the Compensation Judge erroneously excluded from the compensation base the value of decedent's services as a homemaker. Petitioner's position, however, is contrary to the plain language of N.J.S.A. 34:15-13 which limits the compensation base to "wages", defined as "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident." N.J.S.A. 34:15-37. Furthermore, workers' compensation is a system of placing the cost of employment related disability on the industry in which it occurs. Homemaking services by their nature lack that nexus to the employment relationship required by the statutory scheme. Cf. Ricciardi v. Damar Products Co., 45 N.J. 54, *80 64 n. 2 (1965). In addition, with respect to a spouse's contributions to the household, we see no analogy between workers' compensation death benefits and civil damages recoverable by next of kin for wrongful death or awards based upon equitable distribution in the matrimonial field. In this vein, we note the Appellate Division recently rejected this petitioner's claim that the value of the decedent's homemaking services should be considered in computing the accidental death benefit allowance under N.J.S.A. 43:15A-49(b). Matter of Tomarchio, 148 N.J. Super. 99 (App. Div. 1977).
Finally, in light of our holdings, it becomes unnecessary to consider the alternative ruling of the Judge of Compensation as to whether petitioner was actually dependent upon decedent and thus entitled to widower's death benefits as a partial dependent under N.J.S.A. 34:15-13. That ruling is therefore set aside.
Accordingly, the judgment of the Division of Workers' Compensation is modified and as modified is affirmed.
For affirmance as modified  Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER  7.
For reversal  None.
NOTES
[1] Further consolidation of this "substantial relationship" test is evidenced by the summary affirmances by the Supreme Court of the decisions of several lower federal courts which have invalidated on equal protection grounds survivor's benefits provisions differentiating between surviving husbands and wives as to proof of dependency. See, e.g., Califano v. Abbott (N.D. Ohio 1976), aff'd 430 U.S. 924, 97 S.Ct. 1540, 51 L.Ed.2d 768 (1977); Califano v. Jablon, 399 F. Supp. 118 (D. Md. 1975), aff'd 430 U.S. 924, 97 S.Ct. 1539, 51 L.Ed.2d 768 (1977); Califano v. Silbowitz, 397 F. Supp. 862 (S.D. Fla. 1975), aff'd 430 U.S. 924, 97 S.Ct. 1539, 51 L.Ed.2d 768 (1977). See also Moss v. Secretary of HEW, 408 F. Supp. 403 (M.D. Fla. 1976); Coffin v. Califano, 400 F. Supp. 953 (D.D.C. 1975), app. dism., 430 U.S. 924, 97 S.Ct. 1539, 51 L.Ed.2d 789 (1977); Hau v. Califano (D.N.J. 1976), app. dism., 430 U.S. 960, 97 S.Ct. 1613, 51 L.Ed.2d 812 (1977). Cf. Kalina v. Railroad Retirement Bd., 541 F.2d 1204 (6 Cir.1976), appeal docketed 431 U.S. 909, 97 S.Ct. 2164, 53 L.Ed.2d 220 (1977), (invalidating a similar proof of dependency requirement imposed on a husband but not a wife seeking a spouse's annuity under the Railroad Retirement Act). The current equal protection philosophy is undoubtedly reflected in the federal workers' compensation law, 5 U.S.C. §§ 8101, 8133 (1974), which grants the conclusive presumption of dependency equally to widows and widowers.
[2] Since Kahn v. Shevin the Supreme Court has upheld a statute against an equal protection challenge under the remedial purpose rationale. In Schlesinger v. Ballard, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975), the Court sustained an attrition provision which gave female naval officers a longer tenure than male officers before mandatory discharge. This system, however, was actually designed to remedy discrimination inherent in the armed services due to the fact that women could not readily attain promotions because of certain restrictions upon their activity. See also Califano v. Webster, 430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977).
[3] The remedy here approved, applying all widows' dependency provisions uniformly to widowers, is consistent with the provisions of a proposed comprehensive revision of our workers' compensation statute presently before the Legislature. Senate Bill 1732 (1976). Section 12(f) of this legislation extends the conclusive presumption of dependency to widowers by replacing the term "widow" in the present formulation with the sex-neutral designation "spouse." The remarital limitation in the present N.J.S.A. 34:15-13(f) is similarly extended to widowers by the pending law. Also, a revised § 12(j) extends death benefits to widowers "during the entire period of survivorship," subject to remarriage (§ 12(f), supra) and a possible employment reduction after 450 weeks. The proposed legislation thus reflects an awareness of present concepts of equal protection and the need for sex-neutral classifications in legislative programs.