RUTHERFORD EDUCATION ASSOCIATION, CAROL A. FROEH-LICH, DAVID SKIDMORE AND JOANNE ROSS, APPELLANTS, v. BOARD OF EDUCATION OF THE BOROUGH OF RUTHER-FORD, BERGEN COUNTY, RESPONDENT.

LINDA MCGOVERN, APPELLANT, v. BOARD OF EDUCATION OF THE BOROUGH OF RIVERDALE, MORRIS COUNTY, RESPONDENT.

THEA LEVINSKY, APPELLANT, v. BOARD OF EDUCATION OF THE PASCACK VALLEY REGIONAL HIGH SCHOOL DISTRICT, BERGEN COUNTY, RESPONDENT.

LAURIE CURRIER, APPELLANT, v. BOARD OF EDUCATION OF THE TOWNSHIP OF WEEHAWKEN, HUDSON COUNTY, RESPONDENT.

FAIR LAWN EDUCATION ASSOCIATION, KAY BERGQUIST, ELEANOR JASNOW, FLORA FRANK, ANNE JOYCE SCHLEI-ER, REET HAYDEN, PHYLLIS STOLAR, RUTH E. ROGLER, EILEEN ZELCH, NESSIA GORMANNS, VIVIAN C. FELICE, PATRICIA S. SMOTZER, ELAINE PAVON, NANCY DIXON, KATHERINE SOLOMON, MYRA SPIRA, CLARE SALESKY, MURIEL HIRSCH, VIRGINIA E. WHITMAN, ARLENE ALBA-LAH, EILEEN SPIELMAN, FYRNE ZAGORIA, ELLEN LEVY, MARCIA SALKOWITZ, JANET FORER, NATALIE WEISSMAN, SYBIL B. PINE AND BARBARA RUDNICK, APPELLANTS, v. BOARD OF EDUCATION OF THE BOROUGH OF FAIR LAWN, BERGEN COUNTY, RESPONDENT.

NEW MILFORD EDUCATION ASSOCIATION, ANITA SCULT, LIN-DA MACCHIO, JANET FLIEGER, ELAINE GLINE AND DEBO-RAH BOGYO, RESPONDENTS, v. BOARD OF EDUCATION OF THE BOROUGH OF NEW MILFORD, APPELLANT.

Argued November 26, 1984—Decided April 11, 1985.

10

*H. Ronald Levine* argued the cause for respondent Board of Education of the Borough of Rutherford, etc.

*Sidney A. Sayovitz* argued the cause for respondent Board of Education of the Borough of Riverdale, etc. (*Greenwood and Sayovitz,* attorneys).

*Brian N. Flynn* argued the cause for respondent Board of Education of the Township of Weehawken, etc. (*Krieger, Ferrara, Flynn and Catalina,* attorneys).

*Sheldon H. Pincus* argued the cause for respondents New Milford Education Association, et al. (*Bucceri & Pincus,* attorneys; *Gregory T. Syrek,* of counsel and on the brief).

*Regina A. Murray,* Deputy Attorney General, argued the cause for respondent State Board of Education (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

*Susan Galante,* Associate Counsel, submitted a brief on behalf of *amicus curiae* New Jersey School Boards Association in A–45 *Rutherford Education Association v. Board of Education of the Borough of Rutherford* (*Paula A. Mullaly,* General Counsel, attorney).

*Gregory T. Syrek* argued the cause for appellants Rutherford Education Association, et al. (*Bucceri & Pincus,* attorneys).

*Gerald L. Dorf* argued the cause for appellant Board of Education of the Borough of New Milford (*Gerald L. Dorf,* attorney; *Russell Weiss, Jr.,* on the briefs).

*Reginald F. Hopkinson* argued the cause for respondent Board of Education of the Borough of Fair Lawn, etc. (*Jeffer, Hartman, Hopkinson, Vogel, Coomber & Peiffer,* attorneys).

*Louis C. Rosen* argued the cause for respondent Board of Education of the Pascack Valley Regional High School District, etc. (*Aron & Salsberg,* attorneys; *Rodney T. Hara,* on the brief).

The opinion of the Court was delivered by

GARIBALDI, J.

The issue here is whether *Spiewak v. Rutherford Board of Educ.*, 90 *N.J.* 63 (1982), is to be applied retroactively to Title 1, supplemental and compensatory education teachers (Title 1 teachers), who filed petitions with the Commissioner of Education prior to June 23, 1982, the date of our decision in *Spiewak*. In *Spiewak*, we held that a Title 1 teacher is eligible for tenure unless he or she comes within the explicit exceptions of *N.J. S.A.* 18A:28–5 or related statutes such as *N.J.S.A.* 18A:16–1.1. *Id.* at 74. We also held that "the legal rule established by these cases shall be applied prospectively to all persons not before the Court * * *." *Id.* at 83. Further, we decided that teachers not before the Court would not be entitled to any back pay award, and would not be entitled to be rehired if they had been terminated before the date of the decision. *Id.* at 83 n. 2.

Each of the teachers in this appeal was employed by a board of education as a Title 1 teacher and each filed a petition with the Commissioner of Education, prior to the date of our *Spiewak* decision, seeking a declaration of tenure eligibility, reinstatement, additional salary, and/or additional benefits. Accordingly, this appeal requires us to determine whether the right to tenure and the emoluments of tenure afforded to the plaintiffs in *Spiewak* should be similarly afforded to these teachers. Today, we hold that a Title 1 teacher still employed by a school district at the time of this Court's decision in *Spiewak*, who had instituted an action based on his or her right to tenure and the benefits attached thereto prior to our *Spiewak* decision, is entitled to the same retroactive application of tenure and the emoluments of tenure, as the plaintiffs in *Spiewak*, subject to the limitations later set forth in this opinion.

In this connection, it is essential to emphasize what we decided in *Spiewak*. In that case, we held that Title 1 teachers were "teaching staff members" within the meaning of *N.J.S.A.* 18A:1–1, and therefore "[a]s to the teachers involved in this

litigation, they are all entitled not only to tenure but also to retroactive payment of any benefits they would have received if they had been accorded tenure properly." 90 *N.J.* at 83. There, as here, we were concerned with the class of teachers eligible for tenure status.

We did not decide in *Spiewak,* nor do we decide today, what are the emoluments of tenure. As stated in *Spiewak:*

> We do not decide what, if any, additional benefits the teachers in these cases are entitled to, either retroactively or prospectively. This is primarily a matter of contract and the relevant collective bargaining agreements are not part of the record. Further, the parties for the most part did not brief this question and the Appellate Division did not address it. We therefore remand to the Commissioner of Education to make that determination in accord with the principles laid down in this opinion. [*Id.* at 84 n. 3.]

Accordingly, as in *Spiewak,* we remand to the Commissioner of Education to determine when tenure accrued for each teacher in this case, what retroactive benefits each teacher is entitled to receive, and the calculations of such benefits, in accordance with the principles set forth in this opinion.[1]

## I

On appeal to the Appellate Division, *Rutherford Education Association et als. v. Rutherford Board of Education, Bergen County, Linda McGovern v. Riverdale Board of Education, Thea Levinsky v. Pascack Valley Regional High School District Board of Education, Laurie Currier v. Weehawken Township Board of Education, Hudson County, and Fair Lawn Education Association et als. v. Fair Lawn Board of Education, Bergen County,* were argued and decided together.

---

[1] We have been advised by the Attorney-General that the Legal Committee of the State Board of Education is drafting its recommendation to the State Board on a number of appeals that concern the issue of what, if any, benefits Title 1 teachers are entitled to by virtue of their tenure-eligibility status pursuant to the *Spiewak* decision.

A. *Rutherford Education Association, Carol A. Froeh-
lich, David Skidmore, and Joanne Ross v. Board of
Education of the Borough of Rutherford, Bergen
County*

This case (Rutherford) was instituted on April 14, 1980 by
the filing of a verified complaint by plaintiffs, Rutherford
Education Association, Carol A. Froehlich, David Skidmore, and
Joanne Ross, against the Rutherford Board of Education
(Board). The three individuals were employed by the respon-
dent, Rutherford Board of Education, as tenure-eligible Title 1
and State Compensatory Education (S.C.E.) teachers. The com-
plaint alleged that Froehlich, Skidmore, and Ross, serving as
S.C.E. and Title 1 teachers, were qualified for tenure within the
meaning of *N.J.S.A.* 18A:28–5, and thus entitled to the corre-
sponding salary and benefits of other teaching staff members.
Carol Froehlich has been employed by the Board since 1977,
David Skidmore since 1975. Joanne Ross' employment was
terminated after the 1979–80 school year due to a lack of
funding.

The State Board of Education concluded that Ross' position
was abolished in good faith for economic reasons and therefore
held that Ross was not entitled to tenure or reinstatement.
The State Board also held that Froehlich and Skidmore were
tenure eligible, but calculated sick leave benefits for them from
June 23, 1982 (the date of this Court's decision in *Spiewak*).
The Board denied all other compensatory claims, retroactive
and prospective.

The Appellate Division affirmed the State Board's holding
that Ross was not entitled to reinstatement but reversed the
State Board's conclusion that Froehlich and Skidmore were not
entitled to receive the same salary and benefits as other teach-
ers in the school district. It held that they were entitled to
receive proper salary guide placement and benefits on a par
with other teaching staff members. However, the Appellate
Division denied the teachers' request for retroactive relief,

holding that all relief commenced on June 23, 1982, and remanded the case to the Commissioner of Education for a determination of the amount of back salary due Froehlich and Skidmore.

B. *Linda McGovern v. Board of Education of the Borough of Riverdale*

This case (McGovern) was initiated on March 16, 1978 by the filing of a verified petition. Linda McGovern claimed tenured status as a teaching staff member on the basis of her service as a Title 1 supplementary teacher from September 1974 through December 1977, and as a regular classroom teacher from January 1, 1978 through June 30, 1978. Following the 1977–78 school year, McGovern's employment was terminated due to a reduction in force caused by declining enrollment. The State Board of Education held that in accordance with the *Spiewak* decision, McGovern's prior termination by the Board barred her claims of tenure and compensation. On appeal to the Appellate Division, McGovern sought reinstatement, and retroactive and prospective salary and benefits. The Appellate Division affirmed the decision of the State Board, finding it in accord with *Spiewak.*

C. *Thea Levinsky v. Board of Education of the Pascack Valley Regional High School District*

This case (Levinsky) was initiated by the filing of a verified petition on August 20, 1980. Levinsky was employed as an S.C.E. math teacher from November 8, 1976 through May 9, 1977. When this position was discontinued, she was employed as a Title 1 compensatory education math and reading teacher from September 6, 1978 through June, 1981. Her employment was terminated at the end of the 1980–81 school year due to a lack of funding. Consequently, Levinsky lacked sufficient time for the acquisition of tenure under *N.J.S.A.* 18A:28–5. Her petition sought recovery for back pay and benefits afforded other tenure-eligible staff members.

The State Board of Education held that since Levinsky's employment terminated before she acquired tenure and she was not employed by the Pascack Valley Board of Education at the time of our *Spiewak* decision, she was foreclosed from any relief. Since Levinsky conceded that she was discharged prior to acquiring tenure, the only issue was whether she was entitled to retroactive back wages. The Appellate Division affirmed the decision of the State Board of Education.

### D. *Laurie Currier v. Board of Education of the Township of Weehawken*

This case (Currier) was initiated on July 24, 1981, by a verified petition. The petition alleged that the school board's action to employ her on only a part-time basis from September 9, 1981 through September 30, 1981, after she had acquired tenure under the terms of *N.J.S.A.* 18A:28–5, violated her tenure and seniority rights. Currier seeks recovery of the salary and benefits belonging to a full-time teacher only for September 1981.

Currier is a certified elementary school teacher and was employed by the Board as a S.C.E. teacher on a per-diem basis from December 7, 1976 to June 17, 1977. She was again employed from February 24, 1978 to June 21, 1978. She was then employed as an elementary school teacher during the 1978–79, 1979–80, and 1980–81 school years and was compensated according to the teachers' salary guide. On April 28, 1981 the Board voted not to renew Currier's employment contract for the 1981–82 school year. She was, however, reemployed as a part-time S.C.E. teacher from September 9, 1981 through September 30, 1981, and then employed full-time in that position beginning October 1, 1981. She currently holds that position.

The State Board of Education held that Currier had attained tenure, but denied compensatory relief for the month of September, 1981. The State Board relied on the language of *Spiewak* to the effect that teachers not before the Court would

not be entitled to any back pay award. The sole issue Currier appealed to the Appellate Division was whether the State Board properly denied her retroactive monetary relief for September 1981. The Appellate Division affirmed the State Board's decision, holding that it was in accord with *Spiewak*.

E. *Fair Lawn Education Association, et als. v. Board of Education of the Borough of Fair Lawn*

This action (Fair Lawn) was initiated by verified complaint on September 9, 1980 on behalf of the Fair Lawn Education Association and twenty-seven teachers, only seven of whom are involved in this appeal. The petition alleged that as Title 1, S.C.E., and supplemental teachers the plaintiffs were entitled to tenure pursuant to *N.J.S.A.* 18A:28–5 and the same salary and benefits granted to other teaching staff members in their district. Some of the teachers have been employed since 1969.

The State Board of Education held that the positions held by Levy, Pavon, Stolar, Albalah, Solomon, Smotzer, and Jasnow were tenurable, but that any emoluments accruing with tenure should be awarded only prospectively. The Board further held that Levy never achieved tenure, that Jasnow's tenure ended with her voluntary termination prior to our *Spiewak* decision, and that Smotzer's tenure ended when she died prior to our *Spiewak* decision. None of these three women was granted further relief. Solomon, Albalah, Pavon, and Stolar were found to have achieved part-time tenure status, and salary level and other benefits were ordered to be adjusted prospectively. The Appellate Division affirmed the decision of the State Board, holding that it was in accord with *Spiewak*, and directed that the prospective relief awarded to the teachers be calculated from June 23, 1982.

F. All of these matters were heard with the appeal known as *Rutherford*. The Appellate Division affirmed the State Board in *Levinsky, Currier,* and *McGovern*. With the exception of Joanne Ross' case in the matter of *Rutherford Educa-*

*tion Association, et als. v. Board of Education of the Borough of Rutherford, Bergen County,* and with the exception of the cases of Levy, Jasnow, and Smotzer in the matter of *Fair Lawn Education Association, et als. v. Board of Education of the Borough of Fair Lawn,* the Appellate Division remanded the cases of the remaining teachers in *Rutherford* and *Fair Lawn* to the Commissioner of Education to determine what prospective benefits are owed to the teachers, consistent with that court's opinion. We granted the teachers' petition of certification. 97 *N.J.* 595 (1984).

We now affirm the judgment of the Appellate Division in *Levinsky, McGovern,* and *Fair Lawn* to the extent it denied retroactive tenure or emoluments to teachers terminated prior to our decision in *Spiewak.* We reverse the judgment of the Appellate Division in *Currier, Rutherford,* and *Fair Lawn* to the extent that it denied retroactive tenure to teachers still employed at the time of the *Spiewak* decision. We remand *Currier, Rutherford,* and *Fair Lawn* to the Commissioner of Education for a determination of when each teacher achieved tenure, the emoluments each teacher is entitled to receive due to his or her tenured status, and the calculation of such benefits in accordance with this opinion.

### G. *New Milford Education Association, et als. v. Board of Education of the Borough of New Milford*

This case was instituted by the filing of a verified petition on July 9, 1981, naming the New Milford Education Association, Anita Scult, Linda Macchio, Janet Fliegler, Elaine Gline, and Deborah Bogyo as plaintiffs. The petition alleged that the employment history of the individually named Title 1 and S.C.E. teachers entitled them to tenure, retroactive and prospective salary guide placement, and other benefits that would have accrued had their jobs been properly classified. Some of these teachers have been employed since 1969 and the early 1970's.

The Administrative Law Judge held that all the plaintiffs were tenured, and as such were entitled to prospective and retroactive salary guide placement from the date of filing their petition.

The State Board of Education held that back pay should not be awarded prior to June 23, 1982, the date that *Spiewak* was decided by this Court, and therefore held that back pay could not be awarded for the 1981–82 school year. The State Board also held that two of the teachers, Scult and Fliegler, were entitled to count all years of prior teaching experience towards their prospective salary guide placement.

The Appellate Division reversed that part of the State Board's decision denying back pay pursuant to retroactive salary guide placement.

We granted the New Milford Board of Education's petition of certification. 97 *N.J.* 595 (1984). We now affirm the judgment of the Appellate Division to the extent that it granted tenure eligibility, and the emoluments thereof, to teachers who were not before the Court in *Spiewak* but who had filed a petition with the Commissioner of Education prior to the decision in that case. We remand the case to the Commissioner of Education to calculate when each teacher achieved tenure, the emoluments each teacher is entitled to receive due to his or her tenured status, and the calculation of such benefits, in accordance with this opinion.

## II

As long ago as 1940 Chief Justice Charles Evans Hughes lamented that questions of retroactivity had for years been considered "among the most difficult" problems that engage the attention of the courts, both state and federal. *See Chicot County Drainage Dist. v. Baxter State Bank,* 308 *U.S.* 371, 374, 60 *S.Ct.* 317, 319, 84 *L.Ed.* 329, 333 (1940); *Coons v. American Honda Motor Co., Inc., (Coons II ),* 96 *N.J.* 419, 425 (1984). That the issue of retroactivity still remains troublesome

is evident in our reconsideration of it in *Coons II*, eighteen months after our decision in *Coons v. American Honda Motor Co.*, 94 *N.J.* 307 (1983), (*Coons I*), and here, twenty months after our decision in *Spiewak*. The Supreme Court faces similar difficulties in dealing with retroactivity. *See Shea v. Louisiana*, —— *U.S.* ——, 105 *S.Ct.* 1065, 84 *L.Ed.*2d 38 (1985), in which the Court struggled with the limited retroactive application of its decision in *Edwards v. Arizona*, 451 *U.S.* 477, 101 *S.Ct.* 1880, 68 *L.Ed.*2d 378 (1981).

This Court has "generally followed the traditional rule that the overruling of a judicial decision is retrospective in nature." *Darrow v. Hanover Tp.*, 58 *N.J.* 410, 413 (1971); *see also Coons II, supra*, 96 *N.J.* at 439; *Busik v. Levine*, 63 *N.J.* 351, 360–61 (1973), app. dism. 414 *U.S.* 1106, 94 *S.Ct.* 831, 38 *L.Ed.*2d 733 (1973); *Wangler v. Harvey*, 41 *N.J.* 277, 287 (1963); *Fox v. Snow*, 6 *N.J.* 12, 14 (1950); *Ross v. Board of Chosen Freeholders of Hudson Cty.*, 90 *N.J.L.* 522 (E. & A.1917); *Goncalvez v. Patuto*, 188 *N.J.Super.* 620, 626 (App.Div.1983); *Cogliati v. Ecco High Frequency Corp.*, 181 *N.J.Super.* 579, 582 (App.Div. 1981), aff'd, 92 *N.J.* 402 (1983). *Darrow* further stated that the basis for the doctrine of retrospective application is pragmatic rather than theoretical, resting upon the judicial perception that ordinarily "a weighing of the various policies involved called for retrospectivity." 58 *N.J.* at 413–14. Thus, there is a presumption in favor of retrospectivity, and "that presumption can be overcome only by a clear demonstration in a particular case that there are sound policy reasons for according a judicial decision prospective application only." *Cogliati, supra*, 181 *N.J.Super.* at 583.

The threshold inquiry in any retroactivity decision is whether a new rule of law has actually been announced. *State v. Burstein*, 85 *N.J.* 394 (1981). In *Spiewak*, we held that our decision explicitly overruled *Point Pleasant Beach Teachers' Ass'n v. Callam*, 173 *N.J.Super.* 11, certif. den., 84 *N.J.* 469 (1980). As we wrote in *Spiewak*, "[o]ne can hardly imagine a

clearer case of a clean break in the law than disapproval of a court decision that has been followed by state agencies." *Spiewak, supra,* 90 *N.J.* at 83. Today, we affirm our decision that *Spiewak* amounted to a new rule of law.

We have held that in determining whether to apply a new rule retroactively a court has four options: (1) make the new rule of law purely prospective, applying it only to cases whose operative facts arise after the new rule is announced; (2) apply the new rule to future cases and to the parties in the case announcing the new rule, while applying the old rule to all other pending and past litigations; (3) grant the new rule limited retroactivity, applying it to cases in (1) and (2) as well as to pending cases where the parties have not yet exhausted all avenues of direct review; and (4) give the new rule complete retroactive effect, applying it to all cases, even those where final judgments have been entered and all avenues of direct review exhausted. *State v. Burstein, supra,* 85 *N.J.* at 402–03 (citing *State v. Nash,* 64 *N.J.* 464, 468–70 (1974)).

Which option a court chooses depends primarily on the court's decision as to what is just and consonant with the public policy considerations in the situation presented. *State v. Nash, supra,* 64 *N.J.* at 469. In making the choice, however, we have held that a court should consider the following three factors: (1) the purpose of the new rule and whether it would be advanced by retroactive application; (2) the reliance placed on the old rule by the parties and the community; and (3) the effect that retroactive application would have on the administration of justice. *State v. Burstein, supra,* 85 *N.J.* at 406; *see Mirza v. Filmore Corp.,* 92 *N.J.* 390, 397 (1983); *State v. Catania,* 85 *N.J.* 418, 446 (1981); *State v. Carpentieri,* 82 *N.J.* 546, 549 (1980); *State v. Howery,* 80 *N.J.* 563, 569, *cert.* den., 444 *U.S.* 994, 100 *S.Ct.* 527, 62 *L.Ed.*2d 424 (1979); *State v. Lueder,* 74 *N.J.* 62, 77–78 (1977); *State v. Nash, supra,* 64 *N.J.* at 471. In determining whether a court should apply a decision

retroactively, the Supreme Court has held that virtually the same factors should be considered.

(1) whether the decision establishes a "new principle of law;" (2) whether retroactive operation of the decision would further or retard the purpose of the new rule; and (3) whether retroactive application would work an injustice upon those who had reasonably relied upon the old rule. *Chevron Oil Co. v. Huson*, 404 *U.S.* 97, 106–07, 92 *S.Ct.* 349, 355, 30 *L.Ed.*2d 296, 306 (1971). [*Coons II*, *supra*, 96 *N.J.* at 440 (Garibaldi, J., dissenting)].

Depending upon the facts of a case, one of the factors may be pivotal. For example, we look to factor one, the purpose, when the new rule is an exclusionary rule meant solely to deter illegal police conduct. In that instance the new rule is virtually never given retroactive effect, for "the deterrent purposes of such a rule would not be advanced by applying it to past misconduct." *State v. Burstein, supra*, 85 *N.J.* at 406.

Similarly, in *Chevron Oil Company, supra*, 404 *U.S.* 97, 108, 92 *S.Ct.* 349, 356, 30 *L.Ed.*2d 296, 306, the Supreme Court held that although Louisiana's statute of limitations, rather than federal law of laches, was applicable to the federal court action, the Court would not apply it retroactively, for to do so would deprive the injured employee of any remedy. To terminate the lawsuit abruptly was deemed to be "inimical to the beneficient purpose of the Congress."

In other cases the factor determinative of whether to apply a new rule of law retroactively is the second factor, the reliance placed on the old rule by the parties and the communities. *State v. Burstein, supra*, 85 *N.J.* at 406; *Coons II, supra*, 96 *N.J.* at 440; *Salorio v. Glaser*, 93 *N.J.* 447 (1983). For example in *Salorio*, although we declared the Emergency Transportation Tax Act, *N.J.S.A.* 54:8A–1 to –57 unconstitutional, we applied our decision prospectively, in recognition of the State's fiscal problem and its reliance on the taxing statute as a significant revenue-raising measure. *Id.* at 467. Likewise in *Passaic v. Local Fin. Bd.*, 88 *N.J.* 293, 303 (1982), despite the municipality's adoption of an ordinance in violation of the law, this Court would not remand for a review of the appropriation

and financing inasmuch as expenditures in reliance thereon could not be undone.

In contrast, "in tort law the element of reliance is substantially less important and retrospectivity generally applicable." *Mirza v. Filmore Corp., supra,* 92 *N.J.* at 398, in which we upheld retroactive application of law holding that commercial landowners are responsible for maintaining public sidewalks abutting their property in reasonably safe condition. As Justice Proctor stated in *Darrow v. Hanover Township, supra,* 58 *N.J.* at 415, "reliance has very little place in the field of torts so far as it affects the negligence itself; persons do not generally regulate their conduct because they will or will not be liable in negligence." *See also Dalton v. St. Luke's Catholic Church,* 27 *N.J.* 22 (1958), in which immunity of charitable organizations for tort liability was overturned retrospectively, in view of the fact that validity of the immunity had been questioned for a considerable period of time, making reliance unjustified. *But see New Jersey Bd. of Higher Educ. v. Shelton College,* 90 *N.J.* 470, 490 (1982) (enjoining unlicensed college from granting degrees but allowing award of credits and degrees to junior and senior students in recognition of students' pursuit of educational goals in "good faith" reliance on credibility of institution); *Jersey Shore v. Estate of Baum,* 84 *N.J.* 137, 152 (1980) (common-law principle of protecting wife from liability for husband's necessary expenses, without according similar protection to husband, invalidated on equal protection grounds; holding applied prospectively only to debts incurred after date of decision because of "primary factor" of "[r]eliance on the prior law"); *Barone v. Harra,* 77 *N.J.* 276, 281 (1978) (in view of reliance on prior law, Court's holding of compensability under workers' compensation law for injuries sustained during lunch period applied prospectively); *Merenoff v. Merenoff,* 76 *N.J.* 535, 560 (1978) (abolition of interspousal tort immunity in personal injury actions applied prospectively); *Tomarchio v. Township of Greenwich,* 75 *N.J.* 62, 78 (1977) (invalidation of proof of dependency requirement in workers' compensation

statute applied prospectively); *Mercer Coun. #4 v. Alloway,* 119 *N.J.Super.* 94, 101 (App.Div.) (despite invalidation of Civil Service Commission rule, Commission's "substantial * * * reliance to date" on rule justified declaration that all prior actions as well as actions to be taken within 45 days of court's opinion would be valid), aff'd, 61 *N.J.* 516 (1972); *Darrow v. Hanover Twp., supra,* 58 *N.J.* at 420 (abrogation of interspousal tort immunity in automobile negligence actions applied prospectively in light of the reliance by insurance carriers on the state of the law, which caused them not to investigate accidents in which spousal immunity would have precluded a claim). *Coons II, supra* 96 *N.J.* at 429–30.

In *State v. Burstein, supra,* 85 *N.J.* 394, we examined the effect that the new rule of law would have on the administration of justice, the third factor considered in deciding whether a new rule of law should be applied retroactively. In that case, we held that even limited retroactive application of *State v. Cerbo,* 78 *N.J.* 595 (1979), would inflict "virtually incalculable" costs on our administration of justice.

> The State has represented that, in Essex County alone, retroactivity would require the retrial of or dismissal of counts against at least 60 defendants. On a statewide basis, even limited retroactivity would presumably require additional retrials and dismissals that might burden our courts and other branches of our criminal justice system. As for complete retroactivity, the costs such application would inflict on our administration of justice are virtually incalculable. [*Burstein, supra,* 85 *N.J.* at 410].

In contrast, in *Mirza v. Filmore,* in which we retroactively applied tort liability for injuries sustained as a result of the negligence of commercial landowners who failed to maintain public sidewalks abutting their property in reasonably good condition, we held that "[t]his is not a situation where retrospectivity would unduly hamper our courts or have a drastic impact on the administration of justice." *Mirza v. Filmore, supra,* 92 *N.J.* at 400. Writing for the majority, Justice Schreiber noted that the effect of retrospectivity would be limited by the applicable statute of limitations. *Id.*

■ An additional administrative consideration regarding a court's decision on retroactivity was stated in *Darrow, supra.*

Prospectivity permits the Court to introduce an important change in the law with minimal disruption; it will not affect past conduct or relationships. The fear of disrupting what had been regarded as settled has sometimes restrained our courts from adopting a new and more just rule. [citation omitted]. Prospectivity can avoid unsettling the past and serve as an encouragement for judicial creativity. [58 *N.J.* at 419–20].

The decision whether the need to do justice outweighs the disruption of unsettling the past is one that is dependent upon the facts of each case.

■ Balanced against these factors is our belief that those responsible for effecting a change in the law should benefit from their efforts. Accordingly, we have recognized that purely prospective rulings fail to reward litigants for their efforts and fail to further the broader goal of providing an inducement to challenge existing interpretations of the law. It has long been our position that fundamental fairness generally requires that champions of the cause should be rewarded for their effort and expense in challenging existing law.

■■ In an effort to balance these considerations, this Court has developed the concept of limited prospectivity. There are various types of limited prospectivity, one of which is to apply the decision retroactively to the parties in the lawsuit but prospectively to all others. *See, e.g., Spiewak, supra,* 90 *N.J.* at 82–83 (overruling the prior decision in *Point Pleasant Beach, supra,* 173 *N.J.Super.* 11, applied prospectively except as to parties before court); *Cogliati v. Ecco High Frequency Corp.,* 92 *N.J.* 402, 417 (1983) (decisions extending responsibility of predecessor in title for maintenance of public sidewalks, applied prospectively except as to parties); *Pascucci v. Vagott,* 71 *N.J.* 40, 50–51 (1976) (setting aside of classification standards under welfare statute applied prospectively except as to litigants); *Darrow v. Hanover Township, supra,* 58 *N.J.* at 420 (abrogation of doctrine of interspousal immunity in automobile negligence cases applied prospectively except as to litigants).

 Another form of limited prospectivity is to apply the new rule of law retroactively to the parties before the court and also to those litigants whose claims were pending at the time of the decision announcing the new rule, but prospectively to all others. In *Ramirez v. Amsted Industries*, 86 *N.J.* 332 (1981), we held that as a matter of fundamental fairness a new rule of strict liability in a products liability case should be extended to all plaintiffs similarly situated:

> Therefore, we apply the new rule to the present case and its companion, *Nieves v. Bruno-Sherman Corp. and Harris Corp.*, 86 *N.J.* 361. Moreover, we conclude that on balance and as a matter of fundamental fairness, the benefit of today's rule should be extended to other similarly situated plaintiffs with products liability suits against successor manufacturers affected by this rule, which suits were in progress as of November 15, 1979, the date of the Appellate Division decision. There is a basic justice in recognizing that persons who have exercised the initiative to challenge the existing law should be accorded relief if their claims—not yet resolved when the new rule of law is announced—are ultimately vindicated. [*Id.* at 357].

The teachers in the cases before us argue that the principles of fundamental fairness contemplated by this Court in *Ramirez* are particularly appropriate here.

### III

We turn now to an application of these considerations to this case. In *Spiewak, supra*, 90 *N.J.* 63, we applied the new rule regarding tenure status retroactively only to the litigants in that case, and prospectively to all others. In reaching that conclusion, we relied on the fact that the new rule constituted a major change in the law and that it would be unfair to apply the rule retroactively "to parties that have acted in reliance on the rules established in prior case law." *Id.* at 82. We also found that prospective application of the new rule would "avoid any possible confusion in the administration of statutes and the execution of the law." *Id.* However, we balanced these considerations favoring the Board against the rights of the teachers in that litigation not to be denied the reward for their efforts and expenses in challenging both the practice of their boards of education and the prior law. *Id.* at 83.

 The factors we considered in *Spiewak* are still relevant in considering the retroactive application of that decision. We remain primarily concerned with the financial impact on the boards of education of a retroactive decision. In *Cogliati, supra,* 92 *N.J.* at 417, we emphasized that financial impact upon persons who relied on past law is a sufficient reason to apply the law prospectively. In that case we applied the holding prospectively to all but the litigants in the case, fearing that the new rule might leave property owners or occupiers exposed to liability that they had not contemplated or insured against upon the sale of their property. *Id. But cf. Mirza, supra,* 92 *N.J.* 390, in which we held that the retroactive application of the decision was justifiable because existing insurance would cover the losses of property owners who had relied upon prior law.

There is no question that in this case the school boards acted properly and in good faith in relying on prior law. Further, it is unquestioned that applying *Spiewak* retroactively would have a substantial impact on the finances of many communities. "Municipal financing is predicated on a pay-as-you-go principle." *Lavin v. Hackensack Bd. of Educ.,* 90 *N.J.* 145, 154 (1982). Boards of education prepare budgets on a cash basis. Presumably, they did not budget for expenses that would arise from a retroactive application of *Spiewak.* Therefore, providing tenure and its emoluments retroactively would not only have a serious adverse financial effect on the boards of education, but also may have serious consequences on the tax structure of many communities and other community services. In addition, we maintain, as we did in *Spiewak,* that the retroactive application of that decision would result in administrative confusion. Accordingly, we affirm *Spiewak* to the extent that the decision will not be applied retroactively to all teachers.

 Despite the adverse financial impact and administrative confusion that may be imposed on the respective boards of education, the teachers in this case present strong arguments of fundamental fairness as to why they should be afforded the same relief as the teachers in *Spiewak.* We are not dealing

here with a situation in which noncombatant bystanders seek to crash the victory party. The teachers in these actions were diligent in pursuing their claims of tenure status. They were fighting the same fight as the litigants in *Spiewak*, but merely on another flank. Had these cases been heard by this Court before *Spiewak*, the teachers here would presumably have been given the benefit of our holding in that case. The principle upon which a decision is made retrospective as to the litigants in that case, i.e., to give litigants the benefit of the rule for which they fought, applies equally to teachers who were litigating the *Spiewak* issues simultaneously with the litigants in that case. Having examined the records in these cases, we now believe it unfair to deprive litigants of the benefit of the *Spiewak* holding simply because their cause was not the first one to reach this Court. All the teachers before this Court in this action were diligent in pursuing their claim of tenure status, and all of their actions were commenced prior to our decision in *Spiewak*. Accordingly, we afford them the benefits of the *Spiewak* teachers. .

█ There are, however, two limitations that we place on the retroactive application of the *Spiewak* decision to the teachers who filed a petition prior to our *Spiewak* decision. The first limitation is based upon our recognition that its retroactive application will result in significant administrative confusion if it is applied retroactively to a teacher terminated by a board prior to our *Spiewak* decision, regardless of whether that teacher petitioned the Commissioner of Education prior to *Spiewak*. Permitting the reinstatement of such a teacher would create administrative chaos involving not only that teacher but also other teachers in the system. Such a teacher's right of reinstatement would have to be evaluated in terms of whether he or she had acquired tenure at the time of termination, or whether a Board had terminated a teacher while retaining less senior employees. Any decision reinstating such a teacher could engender a challenge by a displaced teacher. Thus, our *Spiewak* decision will not be applied retroactively to any teach-

er who was not employed by a board at the date of our *Spiewak* decision.

The second limitation on retroactivity reflects our concern with the financial impact on the boards of education if *Spiewak* is given unlimited retroactivity as to all teachers employed by a board at the date of our *Spiewak* decision who had petitioned the Commissioner of Education prior to that decision. Even with respect to those teachers, retroactivity is limited. Although tenure is to be calculated for those teachers from the date of their employment, we hold that the Commissioner of Education shall determine and calculate the emoluments of tenure each teacher is entitled to receive from a date six years prior to our decision in this case.

In arriving at this date, we have considered all the factors relied on by this Court and the United States Supreme Court in determining whether a decision should be applied retroactively. Here, we seek to balance the interests of all of the parties before the Court. We recognize that the various school boards relied in good faith on the law as it existed prior to *Spiewak's* overruling of *Point Pleasant Beach Teachers' Ass'n v. Callam, supra,* 173 *N.J.Super.* 11, and on this Court's assertion in *Spiewak* that the holding of that case was limited to the parties before this Court at that time. The school boards never misled the teachers. Nevertheless, we recognize the right of a teacher who has diligently pursued his or her remedies to receive an award for those efforts. The six-year figure is a compromise between the parties' interests, based on our judgment that to calculate retroactive benefits based on the date on which employment commenced (in some cases as early as the late 1960's) would place an unfair burden on the school boards. This six-year limitation has the additional advantage of administrative ease.

## IV

In conclusion, we hold that Title 1 teachers who were still employed by a school board at the time of this Court's decision

in *Spiewak,* and who had instituted an action with the Commissioner of Education based on his or her right to tenure and the benefits attached thereto prior to our *Spiewak* decision, are entitled to the same retroactive application of tenure and, subject to a six-year limitation, the emoluments of tenure, as the plaintiffs in *Spiewak.* We therefore remand the cases of Carol Froehlich, David Skidmore, Laurie Currier, Katherine Solomon, Arlene Albalah, Elaine Pavon, Phyllis Stolar, and all of the *New Milford* teachers to the Commissioner of Education for a determination of what retroactive benefits are owed to those teachers.

*For affirmance in part; reversal and remandment in part* —Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN and GARIBALDI—6.

*Opposed*—None.