608 A.2d 241

NELSON CRESPO, PLAINTIFF, v. JOSEF STAPF, JOSEF STAPF MASCHINENBAU, DEFENDANTS–RESPONDENTS, AND BETTFEDERENBEAR–BEITUNGSMASCHINEN, SCHACHNE FEATHER COMPANY, HUDSON FEATHER AND DOWN PRODUCTS, INC., PURO DOWN INTERNATIONAL OF NEW JERSEY CORPORATION, PURO INTERNATIONAL OF NEW JERSEY CORP., JOHN DOE (FICTITIOUS) AND ABC COMPANY, (FICTITIOUS), DEFENDANTS, AND JACK PIERMONT AND LERNER AND PIERMONT, ESQS., INTERVENORS–APPELLANTS.

Argued January 6, 1992—Decided June 25, 1992.

---

*John C. Kennedy* argued the cause for appellant (*O'Donnell, Kennedy, Vespole, Piechta & Trifiolis,* attorneys).

*George J. Kenny* argued the cause for respondents (*Connell, Foley and Geiser,* attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

This appeal poses the question whether the tolling provisions of *N.J.S.A.* 2A:14-22 before the amendment effective January 16, 1992, *L.*1991, *c.* 387, violated the Commerce Clause as applied to individual nonresident defendants. Before the 1992 amendment, the statute tolled the limitations period against a nonresident defendant during the time the defendant was not residing in this state. The Law Division held that the statute imposed an unconstitutional burden on interstate commerce and granted summary judgment dismissing the complaint of plaintiff, Nelson Crespo, against defendant Josef Stapf. 242 *N.J.Super.* 254, 576 *A.*2d 346 (1990). The Appellate Division affirmed. 248 *N.J.Super.* 349, 591 *A.*2d 277 (1991). In effect, the judgment barring Crespo's claim against Stapf permitted Crespo to maintain a claim against his attorney, Jack Piermont, and Piermont's law firm, Lerner and Piermont, for malpractice arising from the failure to bring a timely action. We granted certification, 126 *N.J.* 385, 599 *A.*2d 162 (1991), and now affirm.

-I-

The following facts are undisputed. On March 30, 1983, while operating a feather-washing machine in the course of his employment for Puro Down International of New Jersey, Crespo injured his right hand. The machine had been built by Josef Stapf Maschinenbau, the unincorporated manufacturing firm owned by Josef Stapf, a resident of Stuttgart, Germany. Crespo consulted with Piermont, who advised him of his rights under the New Jersey workers' compensation statute, *N.J.S.A.* 34:15-1 to -128, but allegedly failed to inform Crespo of the possibility of a product liability claim against Stapf. The two-year statute of limitations on that claim expired, *N.J.S.A.* 2A:14-2, thereby barring Crespo's claim against Stapf. Crespo then consulted another attorney, who, on March 27, 1987, instituted a malpractice action against Piermont.

Piermont sought dismissal of the complaint, claiming that *N.J.S.A.* 2A:14-22 tolled the statute of limitations on Crespo's underlying claim against Stapf. Piermont's defense was that Crespo's tort action against Stapf would be timely. Consequently, Crespo had suffered no harm, and could not maintain his malpractice action against Piermont. On May 26, 1988, the Law Division granted Piermont's motion to dismiss without prejudice Crespo's malpractice action. On the same day, Crespo sued Stapf, whom he served under the *Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters*, Nov. 15, 1965, [1969] 20 *U.S.T.* 361, T.I.A.S. No. 6638 (hereinafter Hague Convention).

Relying on the two-year statute of limitations, Stapf moved for summary judgment. Crespo answered by asserting that *N.J.S.A.* 2A:14-22 tolled the running of the period of limitations. Stapf replied that the tolling provision violated the Commerce Clause and that the period of limitations had run on Crespo's claim. The Law Division held that the tolling provision as applied to an individual defendant, such as Stapf, violated the Commerce Clause. Consequently, the court grant-

ed Stapf's motion to dismiss Crespo's claim. 242 *N.J.Super.* at 261, 576 *A.*2d 346.

Crespo did not pursue the matter in the Appellate Division, but Piermont intervened as an appellant. Neither Crespo nor the Attorney General, who had intervened in the Law Division, participated in the appeal either before the Appellate Division or this Court. The Appellate Division affirmed the judgment for Stapf.

–II–

■ For nearly three decades, this Court and the United States Supreme Court have reviewed challenges to *N.J.S.A.* 2A:14–22 under the Due Process and Equal Protection Clauses, *U.S. Const.* amend. XIV, § 1, and under the Commerce Clause, *U.S. Const.* art. 1, § 8, cl. 3. This appeal arises from a challenge based on the Commerce Clause, which vests Congress with the "power * * * to regulate Commerce with foreign Nations, and among the states." The effect of that clause is to prohibit states from burdening interstate commerce by discriminating against nonresident businesses.

Before the 1992 amendment, *N.J.S.A.* 2A:14–22 read:

> If any person against whom there is any of the causes of action specified in sections 2A:14–1 to 2A:14–5 and 2A:14–8, or if any surety against whom there is a cause of action specified in any of the sections of article 2 of this chapter, is not a resident of this State when such cause of action accrues, or removes from this State after the accrual thereof and before the expiration of the times limited in said sections, or if any corporation or corporate surety not organized under the laws of this State, against whom there is such a cause of action, is not represented in this State by any person or officer upon whom summons or other original process may be served, when such cause of action accrues or at any time before the expiration of the times so limited, the time or times during which such person or surety is not residing within this State or such corporation or corporate surety is not so represented within this State shall not be computed as part of the periods of time within which such an action is required to be commenced by the section. The person entitled to any such action may commence the same after the accrual of the cause therefor, within the period of time limited therefor by said section, exclusive of such time or times of nonresidence or nonrepresentation.

A corporation shall be deemed represented for purposes of this section if the corporation has filed with the Secretary of State a notice designating a representative to accept service of process. [Footnote omitted.]

To place the present matter in perspective, we summarize the relevant state and federal decisions construing *N.J.S.A.* 2A:14–22. In *Lemke v. Bailey,* 41 *N.J.* 295, 196 *A.*2d 523 (1963), we upheld the statute in the face of an equal protection challenge. We found a rational basis for tolling the statute of limitations against nonresident motorists, and held that the statute did not violate the equal protection rights of those motorists. The opinion did not address the validity of the statute under the Commerce Clause. The statute in *Lemke* was identical to the statute in its pre–1992 form, except for the second paragraph, which was added in 1984.

In the next round of challenges, corporate defendants attacked the statute on due process and equal protection grounds. In *Velmohos v. Maren Engineering Corp.,* 83 *N.J.* 282, 416 *A.*2d 372 (1980), *vacated and remanded,* 455 *U.S.* 985, 102 *S.Ct.* 1605, 71 *L.Ed.*2d 844 (1982), we found that as applied to corporations the statute withstood both attacks. 83 *N.J.* at 296–97, 416 *A.*2d 372. We reached that result despite our refusal to read a corporation's amenability to long-arm service as providing an exemption from the tolling provisions. *Id.* at 292–93, 416 *A.*2d 372. In *G.D. Searle & Co. v. Cohn,* 455 *U.S.* 404, 102 *S.Ct.* 1137, 71 *L.Ed.*2d 250 (1982), the United States Supreme Court arrived at the same conclusion, finding that the New Jersey statute did not result in a denial of equal protection.

More recent cases have involved challenges to the statute under the Commerce Clause. In *Coons v. American Honda Motor Co.,* 94 *N.J.* 307, 463 *A.*2d 921 (1983) (*Coons I*), *cert. denied,* 469 *U.S.* 1123, 105 *S.Ct.* 808, 83 *L.Ed.*2d 800 (1985), we decided that to be "represented" within the state and to avoid the tolling statute, a foreign corporate defendant must obtain a certificate to do business. That requirement unconstitutionally burdened interstate commerce. 94 *N.J.* at 318, 463 *A.*2d 921.

In *Coons I,* we relied on *Allenberg Cotton Co. v. Pittman,* 419 *U.S.* 20, 95 *S.Ct.* 260, 42 *L.Ed.*2d 195 (1974), which found a commerce clause violation in a Mississippi statute that prohibited a foreign corporation from filing suit in that state's courts without first obtaining a certificate of authority. The *Allenberg* court reasoned that the statutory scheme was tantamount to a forced licensure requirement. 419 *U.S.* at 33, 95 *S.Ct.* at 267, 42 *L.Ed.*2d at 206.

The Legislature responded to *Coons I* by amending the tolling statute through the addition of the second paragraph. *L.*1984, *c.* 131, § 1 (eff. Aug. 23, 1984). Under the 1984 amendment, a corporation could be "represented" and receive the benefit of the limitations period if it filed with the Secretary of State a notice designating a representative to accept service of process. The tolling provisions remained unchanged for individual defendants.

The United States Supreme Court decision in *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.,* 486 *U.S.* 888, 108 *S.Ct.* 2218, 100 *L.Ed.*2d 896 (1988), stimulated further commerce clause challenges to *N.J.S.A.* 2A:14-22. *Bendix Autolite* dealt with an Ohio statute that, like *N.J.S.A.* 2A:14-22, required a foreign corporation to appoint an agent for service of process to avoid a tolling of the limitations period. The Court held that conditioning the benefit of the statute of limitations on the corporation's consent to Ohio's jurisdiction constituted an impermissible burden on interstate commerce. 486 *U.S.* at 891, 108 *S.Ct.* at 2220, 100 *L.Ed.*2d at 901.

Other than the instant suit, all subsequent challenges to the tolling statute have also involved corporate defendants. After *Bendix Autolite,* the United States District Court for the District of New Jersey rendered conflicting conclusions on the constitutionality of *N.J.S.A.* 2A:14-22. In *Robinson v. Visual Packaging, Inc.,* 705 *F.Supp.* 216, 219 (D.N.J.1989), Judge Lifland found the statute indistinguishable from the Ohio statute invalidated in *Bendix Autolite.* Judge Wolin, in *Cutler v.*

*Raymark Industries, Inc.*, 707 *F.Supp.* 168, 171–72 (D.N.J. 1989), however, construed the statute to allow corporations to make limited designations that did not subject them to general jurisdiction. So construed, the court found that the New Jersey statute, unlike the Ohio statute in *Bendix Autolite*, did not violate the Commerce Clause. Two years ago, the Third Circuit resolved the conflict in *Juzwin v. Asbestos Corp.*, 900 *F.*2d 686 (3d Cir.), *cert. denied,* —— *U.S.* ——, 111 *S.Ct.* 246, 112 *L.Ed.*2d 204 (1990). The *Juzwin* court held that even assuming that *N.J.S.A.* 2A:14–2 allowed limited designations, the statute facially discriminated against foreign corporations and placed an impermissible burden on interstate commerce. 900 *F.*2d at 689–90. Thereafter, the Appellate Division agreed with the Third Circuit and found the statute to be unconstitutional. *DiFalco v. Subaru of Am., Inc.*, 244 *N.J.Super.* 530, 536, 582 *A.*2d 1284 (1990).

█ In response to *Juzwin* and *DiFalco*, the Legislature enacted the 1992 amendment, which states that when "it appears by affidavit of plaintiff's attorney or any person having knowledge of the facts that, after diligent inquiry and effort, long-arm service cannot be effectuated," the period of limitations shall be tolled. The Legislature did not state that the 1992 amendment was to apply retroactively, and nothing indicates that the Legislature intended the amendment should so apply. Crespo's cause of action accrued and his complaint was dismissed long before the enactment of the 1992 amendment. We are unable to find any basis to conclude that either Crespo or anyone else could reasonably have expected that the statute would apply retroactively. *See Twiss v. State, Dep't of Treasury*, 124 *N.J.* 461, 466–67, 591 *A.*2d 913 (1991). Consequently, we hold that the 1992 amendment does not govern the present matter.

–III–

In the present case, we are concerned not with a federal regulation that preempts the regulation of interstate commerce,

but with the "dormant" or "negative" aspect of the Commerce Clause. *New Energy Co. of Indiana v. Limbach,* 486 *U.S.* 269, 273, 108 *S.Ct.* 1803, 1807, 100 *L.Ed.*2d 302, 308 (1988); *Hughes v. Oklahoma,* 441 *U.S.* 322, 326, 99 *S.Ct.* 1727, 1731, 60 *L.Ed.*2d 250, 255 (1979); *Borough of Glassboro v. Gloucester County Bd. of Chosen Freeholders,* 100 *N.J.* 134, 143, 495 *A.*2d 49, *cert. denied,* 474 *U.S.* 1008, 106 *S.Ct.* 532, 88 *L.Ed.*2d 464 (1985).

Because Stapf is a German citizen and his business is located in Germany, the sale of his machine to Crespo's employer constitutes foreign commerce. A state's power to regulate foreign commerce, like its power to regulate interstate commerce, is subject to the "dormant" facet of the Commerce Clause. Thus, *N.J.S.A.* 2A:14–22 is subject to review under the decisions construing that clause. *See Wardair Canada, Inc. v. Florida Dep't of Revenue,* 477 *U.S.* 1, 7, 106 *S.Ct.* 2369, 2372, 91 *L.Ed.*2d 1, 9 (1986) (holding Florida tax on aviation fuel did not violate dormant foreign Commerce Clause); *South–Central Timber Dev., Inc. v. Wunnicke,* 467 *U.S.* 82, 87, 104 *S.Ct.* 2237, 2240, 81 *L.Ed.*2d 71, 76 (1984) (recognizing dormant nature of foreign Commerce Clause); Laurence H. Tribe, *American Constitutional Law* § 6–21, at 469 (1988) (finding state regulation of foreign commerce "tightly proscribed by the negative implication of what might be called the foreign commerce clause"). The test for determining whether the statute violates the foreign Commerce Clause must be at least as protective as the test for measuring violations of interstate commerce. *See Pittsburgh & S. Coal Co. v. Bates,* 156 *U.S.* 577, 587, 15 *S.Ct.* 415, 419, 39 *L.Ed.* 538, 544 (1895) ("The power to regulate commerce among the several states was granted to Congress in terms as absolute as is the power to regulate commerce with foreign nations."); *License Cases,* 46 *U.S.* (5 *How.*) 504, 578, 12 *L.Ed.* 256, 289 (1847) ("The power to regulate commerce among the several States is granted to Congress in the same clause, and by the same words, as the power to regulate commerce with foreign nations, and is coextensive with it"); *K.S.B. Technical Sales v. North Jersey Dist. Water Supply Comm'n,* 75 *N.J.*

272, 299–300, 381 *A*.2d 774 (1977) (finding that analysis under Commerce Clause for foreign commerce is same as for interstate commerce). Scrutiny of a restraint on foreign commerce may be even more rigorous. *Reeves, Inc. v. Stake*, 447 *U.S.* 429, 437 n. 9, 100 *S.Ct.* 2271, 2278 n. 9, 65 *L.Ed.*2d 244, 252 n. 9 (1980); *Japan Line, Ltd. v. County of Los Angeles*, 441 *U.S.* 434, 448, 99 *S.Ct.* 1813, 1821, 60 *L.Ed.*2d 336, 347–48 (1979). The parties have implicitly recognized, if *N.J.S.A.* 2A:14–22 would fail as a regulation of interstate commerce, it would necessarily also fail as a regulation of foreign commerce.

 Courts have devised two tests for reviewing state legislation under the dormant Commerce Clause. Legislation is valid if it evenhandedly regulates to advance legitimate local interests, notwithstanding incidental effects on interstate commerce, unless "the burden imposed on such commerce is clearly excessive to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 *U.S.* 137, 142, 90 *S.Ct.* 844, 847, 25 *L.Ed.*2d 174, 178 (1970); *see Borough of Glassboro, supra*, 100 *N.J.* at 143, 495 *A.*2d 49. When legitimate state goals are pursued by discriminatory means, the legislation is subject to stricter scrutiny. *See Healy v. Beer Inst., Inc.*, 491 *U.S.* 324, 340, 109 *S.Ct.* 2491, 2501, 105 *L.Ed.*2d 275, 291 (1989); *Maine v. Taylor*, 477 *U.S.* 131, 138, 106 *S.Ct.* 2440, 2447, 91 *L.Ed.*2d 110, 120–21 (1986); *City of Philadelphia v. New Jersey*, 437 *U.S.* 617, 626–27, 98 *S.Ct.* 2531, 2537, 57 *L.Ed.*2d 475, 483 (1978). If a statute facially discriminates against interstate commerce, the burden falls on the statute's proponent to demonstrate that it serves a legitimate local purpose that could not be served by reasonable nondiscriminatory alternatives. *Limbach, supra*, 486 *U.S.* at 278, 108 *S.Ct.* at 1810, 100 *L.Ed.*2d at 311; *Taylor, supra*, 477 *U.S.* at 138, 106 *S.Ct.* at 2447, 91 *L.Ed.*2d at 120–21; *Borough of Glassboro, supra*, 100 *N.J.* at 144, 495 *A.*2d 49.

Previous decisions of the United States Supreme Court and of this Court have equated the strict scrutiny standard with a rule of virtual *per se* invalidity. *City of Philadelphia, supra*, 437

*U.S.* at 624, 98 *S.Ct.* at 2535, 57 *L.Ed.*2d at 481; *Borough of Glassboro, supra,* 100 *N.J.* at 143, 495 *A.*2d 49. Later decisions discarded the *per se* language but maintained the same strict review accorded laws that facially discriminate against interstate commerce. *See, e.g., Healy, supra,* 491 *U.S.* at 349, 109 *S.Ct.* at 2501, 105 *L.Ed.*2d at 296 (strict scrutiny of statute facially discriminating against out-of-state brewers and shippers); *Taylor, supra,* 477 *U.S.* at 138, 106 *S.Ct.* at 2447, 91 *L.Ed.*2d at 120–21 (Maine statute banning importation of bait fish withstood strict scrutiny).

■ The Law Division declined to apply the strict scrutiny test because it found that the purpose of the statute was to preserve causes of action of New Jersey residents and not to erect protectionist barriers against foreign corporations. 242 *N.J.Super.* at 258, 576 *A.*2d 346. In rejecting the strict scrutiny test, the Law Division ignored both the United States Supreme Court's admonition that "the evil of protectionism can reside in legislative means as well as legislative ends," *City of Philadelphia, supra,* 437 *U.S.* at 626, 98 *S.Ct.* at 2536–37, 57 *L.Ed.*2d at 483, and our application of that test in *Coons I, supra,* 94 *N.J.* at 316–18, 463 *A.*2d 921. Regardless of the Legislature's purpose, facial discrimination calls for strict scrutiny. *Taylor, supra,* 477 *U.S.* at 148 n. 19, 106 *S.Ct.* at 2453 n. 19, 91 *L.Ed.*2d at 127 n. 19; *Hughes, supra,* 441 *U.S.* at 337, 99 *S.Ct.* at 1737, 60 *L.Ed.*2d at 262.

■ We find that *N.J.S.A.* 2A:14–22, before the 1992 amendment, failed both the strict scrutiny and the balancing tests. Although defenses predicated on statutes of limitations are not a fundamental right, *Chase Sec. Corp. v. Donaldson,* 325 *U.S.* 304, 314, 65 *S.Ct.* 1137, 1142, 89 *L.Ed.* 1628, 1635–36 (1945); *Coons I, supra,* 94 *N.J.* at 318, 463 *A.*2d 921,

they are an integral part of the legal system and are relied upon to protect the liabilities of persons and corporations active in the commercial sphere. The State may not withdraw such defenses on conditions repugnant to the Commerce Clause. Where a State denies ordinary legal defenses or like privileges or out-of-state persons or corporations engaged in commerce, the State law will

be reviewed under the Commerce Clause to determine whether the denial is discriminatory on its face or an impermissible burden on commerce. [*Bendix Autolite, supra,* 486 *U.S.* at 893, 108 *S.Ct.* at 2221–22, 100 *L.Ed.*2d at 903.]

■ Before the 1992 amendments, *N.J.S.A.* 2A:14–22 clearly discriminated against out-of-state defendants. The provision tolling the running of the statute of limitations applied only to nonresidents. For persons who resided in New Jersey, the period of limitations ran without interruption. So discriminatory a statute calls for strict scrutiny. *Bendix Autolite, supra,* 486 *U.S.* at 898, 108 *S.Ct.* at 2224, 100 *L.Ed.*2d at 907 (Scalia, J., concurring); *Juzwin,* 900 *F.*2d at 689.

Before the 1992 amendments, the statute did not achieve legitimate state goals through means less burdensome on interstate commerce than those available through statutory alternatives. The pre–1992 version was designed to protect New Jersey plaintiffs by tolling the running of the statute against all out-of-state defendants. *See Juzwin, supra,* 900 *F.*2d at 690. By so tolling the limitations period, the statute ignored alternatives that do not require physical presence for the exercise of personal jurisdiction. *Cf. Coons I, supra,* 94 *N.J.* at 313–14, 463 *A.*2d 921 (Legislature chose not to incorporate concept of long-arm jurisdiction in tolling statute); *Velmohos, supra,* 83 *N.J.* at 292–93, 416 *A.*2d 372 (same). Through long-arm jurisdiction, *R.* 4:4–4(c), (e), and out-of-state service, *ibid.,* or in the case of Stapf, service in a foreign country in accordance with the Hague Convention, *supra,* plaintiffs can obtain jurisdiction over nonresident defendants who are not physically present in the state. New Jersey's legitimate interest, therefore, is in tolling the period of the statute of limitations not against all individual defendants who do not reside in the state, but only against those who are not subject to the jurisdiction of New Jersey courts or who cannot be found after reasonably diligent efforts. By stating that New Jersey may deny the benefits of *N.J.S.A.* 2A:14–22 only as to those defendants, *Bendix Autolite, supra,* 486 *U.S.* at 898, 108 *S.Ct.* at 2224, 100 *L.Ed.*2d at 907 (Scalia, J., concurring); *Juzwin, supra,* 900 *F.*2d

at 690, the 1992 amendment demonstrates the availability of a less-restrictive alternative. In its pre–1992 form, however, the statute, which tolled the running of the limitations against nonresident individual defendants, violated the Commerce Clause. *See Abramson v. Brownstein,* 897 *F.*2d 389 (9th Cir.1990) (California tolling statute violated Commerce Clause by forcing nonresident to choose between being present in state for several years and forfeiting limitations defense); *Tesar v. Hallas,* 738 *F.Supp.* 240 (N.D.Ohio 1990) (tolling statute unconstitutionally burdened individuals engaged in interstate commerce).

Even if the tolling statute passed strict scrutiny, it would fail the balancing test. In *Coons I,* we summarized that test: " 'State regulation affecting interstate commerce will be upheld if (a) the regulation is rationally related to a legitimate state end, and (b) the regulatory burden imposed on interstate commerce, and any discrimination against it, are outweighed by the state interest in enforcing the regulation.' " 94 *N.J.* at 316–17, 463 *A.*2d 921 (quoting Laurence H. Tribe, *American Constitutional Law* § 6–5, at 326 (1978)).

Considering the first part of the test, the purpose behind the statute is to preserve causes of action against out-of-state defendants who may not readily be found or served in New Jersey. *See Juzwin, supra,* 900 *F.*2d at 691; *Crespo, supra,* 242 *N.J.Super.* at 259, 576 *A.*2d 346. The second part of the test requires that we balance the benefits from preserving such causes of action against the burdens on interstate commerce. To avoid tolling under the pre–1992 statute, nonresidents must establish residency in New Jersey. That requirement would have obligated Stapf to move from Stuttgart to New Jersey to receive the benefit of the statute. Such a requirement violates the clear implication of the *Bendix Autolite* and *Coons I* opinions. In *Bendix Autolite, supra,* the United States Supreme Court found that the burden of requiring a corporation to subject itself to the general jurisdiction of Ohio's courts outweighed any benefits conferred on Ohio plaintiffs. 486 *U.S.*

at 891–92, 108 *S.Ct.* at 2221, 100 *L.Ed.*2d at 902–03. Similarly, in *Coons I, supra,* we held that the requirement that a foreign corporation obtain a certificate to do business to receive the benefits of the statute of limitations would fail the balancing test. 94 *N.J.* at 317 n. 7, 463 *A.*2d 921. Requiring a person to establish residency, which subjects him or her to the general jurisdiction of state courts, Jack H. Fridenthal et al, *Civil Procedure* § 3.6 (1985), is even more burdensome than requiring a corporation to obtain a certificate to do business or to designate an agent for the service of process. *See Abramson, supra,* 897 *F.*2d at 393 (statute requiring in-state presence under Commerce Clause); *Tesar, supra,* 738 *F.Supp.* at 242 (residency requirement gives prospective individual defendant "an even more draconian choice to make than that presented to the foreign corporation in *Bendix* "). Thus, we conclude that *N.J.S.A.* 2A:14–22 also fails the balancing test and that *N.J.S.A.* 2A:14–2 continued to run against Stapf although he was not physically present in the state. Consequently, Piermont is not entitled to dismissal of Crespo's malpractice action on the ground that the period of limitations had been tolled on Crespo's claim against Stapf.

–IV–

In an attempt to avoid the bar of the statute, Piermont urges that we find *N.J.S.A.* 2A:14–22 to be void prospectively. The effect of such a ruling would be that the period of limitations would not run on Crespo's claim against Stapf. We find the argument unpersuasive.

Questions of retroactivity are among the most difficult problems that engage state and federal courts. *Lemon v. Kurtzman,* 411 *U.S.* 192, 198, 93 *S.Ct.* 1463, 1468, 36 *L.Ed.*2d 151, 160 (1973) (*Lemon II* ); *Chicot County Drainage Dist. v. Baxter State Bank,* 308 *U.S.* 371, 374, 60 *S.Ct.* 317, 319, 84 *L.Ed.* 329, 333 (1940); *Coons v. American Honda Motor Co.,* 96 *N.J.* 419, 424–25, 476 *A.*2d 763 (1984) (*Coons II* ), cert.

*denied,* 469 *U.S.* 1123, 105 *S.Ct.* 808, 83 *L.Ed.*2d 800 (1985). For the past twenty-one years, the relevant test to answer such questions has been the three-factor test contained in *Chevron Oil Co. v. Huson,* 404 *U.S.* 97, 106–07, 92 *S.Ct.* 349, 355, 30 *L.Ed.*2d 296, 306 (1971):

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." [Citations omitted.]

Notwithstanding the recent decision of the United States Supreme Court in *James B. Beam Distilling Co. v. Georgia,* —— *U.S.* ——, 111 *S.Ct.* 2439, 115 *L.Ed.*2d 481 (1991), we are constrained to follow the *Chevron Oil* test. In *Beam,* the Court focused not on the issue before us, whether the court should apply a new rule prospectively to the parties in the case giving rise to the rule, but on the separate issue, whether such a rule should be so applied in a later case involving different litigants asserting claims not barred by procedural requirements or *res judicata.* The specific question in *Beam* was whether to apply prospectively a ruling that a Georgia excise tax violated the Commerce Clause by imposing a greater tax on imported alcoholic beverages than was imposed on beverages distilled within the state. That question had been decided previously in a case involving a nearly-identical Hawaii statute in *Bacchus Imports, Ltd. v. Diaz,* 468 *U.S.* 263, 104 *S.Ct.* 3049, 82 *L.Ed.*2d 200 (1984). In *Beam,* the Georgia courts found the statute unconstitutional under *Bacchus* but gave their decision prospective application. The result was that the State of Georgia was not obligated to refund to an out-of-state distiller taxes collected under the unconstitutional statute. Thus, the retroactivity issue was limited to whether other litigants with facts

arising before *Bacchus* should receive the same benefit accorded to the *Bacchus* litigants. Justice Souter, writing for a plurality consisting of himself, Justice White, and Justice Stevens, reversed the Georgia courts and held that the rule applied retroactively. He found that "principles of equality and *stare decisis* here prevail[ ] over any claim based on a *Chevron Oil* analysis." *Beam, supra,* —— *U.S.* at ——, 111 *S.Ct.* at 2446, 115 *L.Ed.*2d at 491.

By comparison, in the present case, the retroactivity question arises in the first instance simultaneously with the challenge to the constitutionality of the statute. According to six of the nine justices in *Beam,* the *Chevron Oil* test still applies to the determination of the prospective application of a decision in such a case. Justice White concurred with that conclusion, as did Justice O'Connor, who was joined in her dissent by Chief Justice Rehnquist and Justice Kennedy. Only Justices Scalia, Blackmun, and Marshall would overturn *Chevron Oil* and hold that it is beyond the power of the judiciary to make constitutional rulings prospective. *Beam, supra,* —— *U.S.* at ——, 111 *S.Ct.* at 2449–51, 115 *L.Ed.*2d at 495–97. We conclude that we should continue to follow *Chevron Oil* in determining the issue of retroactivity.

 Our analysis of that issue begins with the presumption that judicial decisions ordinarily should apply retroactively. *Accountemps Div., Robert Half of Philadelphia, Inc. v. Birch Tree Group,* 115 *N.J.* 614, 627, 560 *A.2d* 663 (1989); *Rutherford Educ. Ass'n v. Board of Educ. of Rutherford,* 99 *N.J.* 8, 21, 489 *A.2d* 1148 (1985); *Fox v. Snow,* 6 *N.J.* 12, 14, 76 *A.2d* 877 (1950). Policy considerations, however, may justify limiting the retroactive effect of a judicial decision declaring a statute unconstitutional. *See Lemon II, supra,* 411 *U.S.* at 198–99, 93 *S.Ct.* at 1468, 36 *L.Ed.*2d at 160; *Coons II,* 96 *N.J.* at 425–26, 476 *A.2d* 763. The *Chevron Oil* factors reflect the policy considerations that justify a prospective application of such a judicial ruling.

The first factor asks whether the litigants and those similarly situated, *Beam, supra,* —— *U.S.* at ——, 111 *S.Ct.* at 2447, 115 *L.Ed.*2d at 491, reasonably relied on settled law in ordering their affairs. *See New Jersey Election Law Enforcement Comm'n v. Citizens to Make Mayor–Council Gov't Work,* 107 *N.J.* 380, 390, 526 *A.*2d 1069 (1987); *Coons II, supra,* 96 *N.J.* at 428, 476 *A.*2d 763; *Cogliati v. Ecco High Frequency Corp.,* 92 *N.J.* 402, 415, 456 *A.*2d 524 (1983); *Mirza v. Filmore Corp.,* 92 *N.J.* 390, 397, 456 *A.*2d 518 (1983). Here, the question is whether Crespo and Piermont were justified in relying on the tolling statute in waiting over five years to file an action against Stapf. In answering that question, we recognize that our declaration of the unconstitutionality of *N.J.S.A.* 2A:14–2 neither overrules clear past precedents nor decides an issue of first impression that had not been foreshadowed. *See Juzwin, supra,* 900 *F.*2d at 693–95. Our opinion in *Lemke v. Bailey, supra,* 41 *N.J.* at 295, 196 *A.*2d 523, merely upheld the statute in the face of an equal protection challenge. *Lemke* did not address the Commerce Clause. *See Coons II, supra,* 96 *N.J.* at 433, 476 *A.*2d 763 (*Coons I* did not overrule *Velmohos* because it overturned statute on Commerce Clause grounds not addressed by *Velmohos*). The opinions of the United States Supreme Court in *G.D. Searle, supra,* 455 *U.S.* 404, 102 *S.Ct.* 1137, 71 *L.Ed.*2d 250, and of this Court in *Coons I, supra,* 94 *N.J.* 307, 463 *A.*2d 921, rendered unreasonable continued reliance on *Lemke* as immunizing the statute from a challenge predicated on the Commerce Clause. Our ruling that the statute did not violate the principle of equal protection cannot be viewed as providing any such immunity. *Cf. Mirza, supra,* 92 *N.J.* at 399, 456 *A.*2d at 524 (reliance on continuance of limited immunity from liability for sidewalk conditions unreasonable in face of sustained criticism of doctrine); *Dalton v. St. Luke's Catholic Church,* 27 *N.J.* 22, 26–27, 141 *A.*2d 273 (1958) (reliance on tort immunity for eleemosynary institutions unreasonable as validity of doctrine had been questioned for considerable period of time).

Long before the statute of limitations ran on Crespo's claim, decisions of this Court and of the United States Supreme Court had foreshadowed our decision that the tolling provisions violate the Commerce Clause. Although litigants may rely on the presumed validity of a statute, *Salorio v. Glaser*, 93 *N.J.* 447, 465, 461 *A.*2d 1100, *cert. denied*, 464 *U.S.* 993, 104 *S.Ct.* 486, 78 *L.Ed.*2d 683 (1983), several opinions had undermined the application of the statute to individual defendants. Ten years ago the United States Supreme Court in *G.D. Searle v. Cohn*, *supra*, 455 *U.S.* at 413–14, 102 *S.Ct.* at 1144, 71 *L.Ed.*2d at 258–59, first indicated that the tolling statute might run afoul of the Commerce Clause. In that case, the Court affirmed our holding in *Velmohos* that the statute did not violate the Equal Protection Clause, but remanded consideration of the commerce clause issue to the Third Circuit Court of Appeals. Thus, when plaintiff's cause of action accrued on March 30, 1983, the United States Supreme Court had already questioned the continuing validity of the statute under the Commerce Clause.

Our opinion in *Coons I*, which was rendered four months after Crespo's accident, further undercuts the reasonableness of Crespo's reliance on the tolling statute. *Coons I* declared invalid the requirement that foreign corporations obtain a license from the Secretary of State to avoid the tolling of the statute of limitations. We held that the licensing requirement constituted an impermissible burden on interstate commerce. Although *Coons I* was not concerned with the effect of the tolling of the statute on individual defendants, its holding foreshadowed our finding of a commerce clause violation in the application of the statute to such defendants. The 1984 amendment permitting corporate defendants to designate a representative for the service of process, *L.*1984, *c.* 131, changed nothing for individual defendants. *Compare Juzwin, supra,* 900 *F.*2d at 694 (plaintiffs suing corporation could rely on presumptive constitutionality of newly-passed tolling statute effective August 23, 1984). In sum, we cannot distinguish between requiring licensure for corporate defendants and residency for indi-

vidual defendants as predicates to avoid the tolling of the period of limitations.

Furthermore, in *Coons II,* we applied *Coons I* prospectively to benefit a plaintiff who had commenced an action in 1978 on the assumption that *Coons I* announced an unforeshadowed new rule of law. *Coons II, supra,* 96 *N.J.* at 433, 476 *A.*2d 763. During the period of limitations of the claim in *Coons II,* "*N.J.S.A.* 2A:14–22 was in full bloom." *Id.* at 432, 476 *A.*2d 763. In contrast, when Crespo commenced his action on May 26, 1988, the bloom was off the statute. *Coons I* had already signalled a problem with the application of the statute's residency condition to individual defendants.

We note, moreover, that Crespo filed suit just three weeks before the United States Supreme Court decided *Bendix Autolite.* Thus, a commerce clause challenge to a nearly-identical tolling statute was in the Supreme Court's pipeline well before Crespo filed his complaint, thereby casting further doubt on his reasonable reliance on the statute. *See Coons II, supra,* 96 *N.J.* at 432, 476 *A.*2d 763 ("We must look to the law as it was at the time plaintiff contemplated starting suit * * *."). Both our decision in *Coons II* and the then-pending decision of *Bendix Autolite* before the United States Supreme Court anticipated our holding in the present case. It follows that the first *Chevron Oil* factor points toward the retroactive application of today's decision. We conclude that Crespo and Piermont could not have reasonably relied on the 1984 amendment to toll the running of the statute of limitations against individual defendants such as Stapf.

The second *Chevron Oil* factor requires us to "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Chevron Oil, supra,* 404 *U.S.* at 106–07, 92 *S.Ct.* at 356, 30 *L.Ed.*2d at 306. This factor asks whether the purposes of the rule will be advanced by retroactive application. *Rutherford*

*Educ. Ass'n, supra,* 99 *N.J.* at 22, 489 *A.*2d 1148; *Mirza, supra,* 92 *N.J.* at 397, 456 *A.*2d 518. The purpose of our ruling is to prevent New Jersey from burdening interstate commerce by discriminating against nonresident defendants. The failure to give retroactive effect to our finding of unconstitutionality of the statute would deprive nonresident individual defendants, such as Stapf, of the repose to which they are entitled from the running of the period of limitations. Retroactive application of our decision would eliminate discrimination against nonresident individual defendants, ensure equal treatment of all individual defendants, and conform with the Legislature's apparent recognition of the unconstitutionality of the tolling provision.

The final consideration is whether retroactive application would produce inequitable results and adversely affect the administration of justice. *Chevron Oil, supra,* 404 *U.S.* at 106–07, 92 *S.Ct.* at 355, 30 *L.Ed.*2d at 306; *Rutherford Educ. Ass'n, supra,* 99 *N.J.* at 22, 489 *A.*2d 1148. This factor intertwines with the first factor's focus on reasonable reliance. If a plaintiff could have reasonably relied on the tolling provision, retroactive nonrecognition of that provision would be inequitable. *Juzwin, supra,* 900 *F.*2d at 696. For reasons previously stated, Crespo and Piermont could not reasonably have relied on the tolling provision. *Supra* at 368–371, 608 *A.*2d at 250, 251. Nothing in the record indicates that after the accident Stapf was not at all times amenable to long-arm jurisdiction. Stapf contends, and Piermont does not refute, that his identity, address, and telephone number were known immediately after the accident and were available to Crespo or his attorney both before and after the accident. Indeed, when Crespo filed suit, he had no problem in serving Stapf. To bar Crespo's claim against Stapf because of Crespo's own failure or that of his attorney to bring a timely action is neither inequitable nor unfair.

The retroactive application of our declaration of the unconstitutionality of the statute does not leave Crespo without a remedy. Although his action against Stapf is time-barred, he

may still assert a malpractice suit against Piermont. Overall, the equities support retroactive application of our decision.

Our dissenting colleague finds unforeseeable our holding that *N.J.S.A.* 2A:14–22, before the 1992 amendment, was unconstitutional. As we have explained, however, the pre–1992 version of the statute violated the Commerce Clause. *Supra* at 363–364, 608 *A.*2d at 247–248. Our holding, moreover, was foreshadowed by our decision in *Coons I, supra,* 94 *N.J.* 307, 463 *A.*2d 921, and by the United States Supreme Court's decision in *Bendix Autolite, supra,* 486 *U.S.* 888, 108 *S.Ct.* 2218, 100 *L.Ed.*2d 896. *Supra* at 369–370, 608 *A.*2d at 250–251. In reaching the opposite conclusion, the dissent misconstrues both the Appellate Division's decision in *DiFalco, supra,* 244 *N.J.Super.* 530, 582 *A.*2d 1284, and the legislative history underlying the amendments to *N.J.S.A.* 2A:14–22.

As the dissent acknowledges, *post* at 361, 608 *A.*2d at 246, the Appellate Division made its decision in *DiFalco* prospective from the date of the United States Supreme Court's decision in *Bendix Autolite.* 244 *N.J.Super.* at 536, 582 *A.*2d 1284. The court held that the statute after the 1984 amendment violated the Commerce Clause with respect to corporate defendants. *Ibid.* It relied on *Bendix Autolite,* which invalidated a statute that, like the 1984 amendment, required a corporation to designate an agent for service of process to avoid the tolling of the period of limitations. Thus, *Bendix Autolite* foreshadowed the invalidity of the 1984 amendment as applied to corporate defendants. The 1984 amendment, however, did not apply to individual defendants, who were still required to reside in New Jersey to avoid the tolling of the statute. As to them, the unconstitutionality of *N.J.S.A.* 2A:14–22 was clearly foreseeable after *Coons I,* notwithstanding the absence of legislative action until 1992. *Coons I,* which preceded *Bendix Autolite* by five years, foreshadowed the unconstitutionality of the residency requirement. See *supra* at 369–371, 608 *A.*2d at 251. *DiFalco,* which was concerned with corporate defendants, understandably looked to *Bendix Autolite,* rather than *Coons I.*

The dissent also errs in its argument that "had *Coons I* so clearly invalidated all of *N.J.S.A.* 2A:14–22, the Legislature would not have taken nine years to reach the same conclusion * * *." *Post* at 375, 608 *A.*2d at 254. As the legislative history reveals, the Legislature amended the statute in 1984 in response to *Coons I,* expressly stating that the amendment was "intended to meet the Supreme Court's objections as stated in the *Coons* decision and thereby assists New Jersey citizens to pursue their claims against foreign corporations." *Senate Judiciary Committee Statement,* No. 953, *L.*1984, *c.* 131. By comparison, the 1992 amendment was triggered by *DiFalco* and the Third Circuit's opinion in *Juzwin,* both of which followed in the wake of *Bendix Autolite.* The statement accompanying the bill recites that "the bill would correct constitutional defects in the tolling provision that protects the right of New Jersey residents to bring suit against out-of-state corporations and non-residents who are not amenable to service of process. The statute, in its current form, has been declared unconstitutional. See *Juzwin v. Asbestos Corporation, Ltd.,* 900 *F.*2d 686 (3d Cir.1990), *cert. den., —— U.S. ——,* 111 *S.Ct.* 246 [112 *L.Ed.*2d 204] (1990); *DeFalco* [sic] *v. Subaru,* et al., 244 *N.J.Super.* 530 [582 *A.*2d 1284] (App.Div.1990)."

Finally, the dissent incorrectly posits that the equities compel prospective application of our decision. It reaches this conclusion because Crespo is remitted to a legal malpractice action, in which he must prove not merely that Stapf's product was defective, but also that Piermont erred. *Post* at 375, 608 *A.*2d at 254. Missing from the dissent's calculus are the rights of the defendant, Stapf, arising from the expiration of the statute of limitations. Those rights, as the United States Supreme Court has declared, "are an integral part of the legal system * * *." *Bendix Autolite, supra,* 486 *U.S.* at 893, 108 *S.Ct.* at 2221, 100 *L.Ed.*2d at 903. According to the Court, a prospective application may be appropriate when a plaintiff "could not have known the time limitation that the law imposed on him." *Chevron Oil, supra,* 404 *U.S.* at 108, 92 *S.Ct.* at 355, 30

*L.Ed.*2d at 306–07. Here, however, Crespo should have known that *N.J.S.A.* 2A:14–22 could not constitutionally toll the running of the statute of limitations on his claim against Stapf. In sum, the equities do not favor prospective application of our decision.

The judgment of the Appellate Division is affirmed.

O'HERN, J., dissenting.

I would make today's ruling prospective. By its 1992 amendment of *N.J.S.A.* 2A:14–22, the Legislature has clarified that tolling does not occur in the case of nonresident defendants unless long-arm service cannot be effectuated. *L.*1991, *c.* 387. The Court (seeming to think that that law is a break with the past) declines to make the statute retroactive. Instead, it reasons that our 1983 decision in *Coons v. American Honda Motor Co.,* 94 *N.J.* 307, 463 *A.*2d 921 (1983) (*Coons I*), modified, 96 *N.J.* 419, 476 *A.*2d 763 (1984) (*Coons II*), cert. denied, 469 *U.S.* 1123, 105 *S.Ct.* 808, 83 *L.Ed.*2d 800 (1985), and other developments foreshadowed today's ruling that the tolling statute was unconstitutional with respect to individuals as well as corporations.

I would have interpreted the prior tolling statute (as the Legislature has since done) consistent with constitutional mandate to hold that it did not operate unless long-arm service could not be effectuated. That, however, would have required an overruling of *Lemke v. Bailey,* 41 *N.J.* 295, 196 *A.*2d 523 (1963). There is little profit in debating which is the clean break with the past. The majority believes that attorneys should have foreseen today's developments and thus reasons that the proper "remedy" is a malpractice action against attorneys, such as Crespo's earlier attorney, Piermont. *Ante* at 372, 608 *A.*2d at 252. I disagree. In the recent invalidation of *N.J.S.A* 2A:14–22 as applied to corporations, *DiFalco v. Subaru of America, Inc.,* 244 *N.J.Super.* 530, 536, 582 *A.*2d 1284 (1990), the Appellate Division made its ruling prospective from the

date of a controlling ruling of the Supreme Court in *Bendix Corp. v. Midwesco Enterprises, Inc.*, 486 *U.S.* 888, 108 *S.Ct.* 2218, 100 *L.Ed.*2d 896 (1988). *DiFalco* invalidated a 1984 legislative response to *Coons I* that had allowed foreign corporations (in order to avoid tolling) to designate a representative to accept service of process. Not until 1992 did the Legislature ever address the issue of tolling with respect to individual defendants. Not until then does it appear that the Legislature reasoned that *Coons I* and *Bendix* had invalidated all of the tolling provisions of *N.J.S.A.* 2A:14–22.

Hence, I believe that the majority is unnecessarily creating a very cumbersome process on remand. To dispose of the case in this way seems unproductive to me. There must be a trial within a trial—first to determine whether Piermont's conduct amounts to professional malpractice (after all, had *Coons I* so clearly invalidated all of *N.J.S.A.* 2A:14–22, the Legislature would not have taken nine years to reach the same conclusion), and then, within that trial, the jury must decide whether, if that attorney had not been negligent, Crespo would have prevailed against the manufacturer of the machine. Four sets of experts, then, will be needed where two would have sufficed, and there will, in essence, be two law suits where one would have sufficed.

One of our goals should be to simplify the legal process whenever possible. I do not think that we do that here. Most recently, in *Green v. Auerbach Chevrolet Corp.*, 127 *N.J.* 591, 606 *A.*2d 1093 (1992), we declined to apply retroactively our decision on a tolling statute because we said that the "interests of justice will be better served by prospective application of our decision." *Id.* at 364, 608 *A.*2d at 248 (citing *Accountemps v. Birch Tree Group*, 115 *N.J.* 614, 628, 560 *A.*2d 663 (1989)). A malpractice suit against the attorney in that case would have provided the same "remedy" that the majority offers here. Instead, we chose the more equitable disposition of the matter. The equities in this case, as well, favor the prospective application of today's decision.

■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■

*For affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, GARIBALDI and STEIN—6.

*For reversal*—Justice O'HERN—1.