828 A.2d 927

OFFICE & PROFESSIONAL EMPLOYEES INTERNATIONAL UN-
ION LOCAL 32, AFL–CIO, PLAINTIFF–RESPONDENT, v. CAM-
DEN COUNTY MUNICIPAL UTILITIES AUTHORITY, DEFEN-
DANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 19, 2002—Decided July 30, 2003.

Before Judges SKILLMAN, CUFF and WINKELSTEIN.

*Nancy E. Scott,* argued the cause for appellant (*Lisa M. Kmiec,* Solicitor, attorney; *Ms. Scott,* on the brief).

*Mark C. Rushfield,* argued the cause for respondent.

The opinion of the court was delivered by

CUFF, J.A.D.

In this public sector employment matter, an arbitrator awarded back pay to public sector employees denied overtime due to the assignment of other employees to out-of-title work. We must decide whether an arbitrator may award back pay when the collective bargaining agreement does not specifically authorize an award of back pay to remedy a breach of a contract provision. The Law Division confirmed an award of back pay; the employer appeals. We affirm.

Plaintiff Office & Professional Employees International Union Local 32, AFL–CIO (Local 32) represents sludge dewatering machine operators who, it alleged, lost overtime due to the assignment of work within their job classification to personnel in other job classifications. Local 32 alleged the out-of-title work assignments were made to avoid paying overtime to the dewatering operators and violated Articles X, Paragraph G and XXXIV, Paragraph A of the collective bargaining agreement.

Article X governs overtime. Paragraph G provides that "[o]vertime work shall be distributed as equally as possible at each work location and Department/Division among employees within the

same job classification." Article XXXIV governs job duties and responsibilities. Paragraph A provides that "[e]mployees covered by this Agreement shall perform the duties and responsibilities outlined in the NJDOP job specifications for their positions, as required by such agency."

Local 32 filed a grievance on behalf of the sludge dewatering machine operators which was eventually submitted to arbitration in accordance with the contract. Article IV, Paragraph E, subparagraph 2, outlines the authority of the arbitrator. It provides that:

> The arbitrator shall be bound by the provisions of this Agreement and the Constitution and laws of the State of New Jersey, and be restricted to the application of the facts presented to him/her involved in the grievance. The arbitrator shall not have the authority to add to, modify, detract from or alter in any way the provisions of this Agreement or any amendment or supplement thereto. The decision of the arbitrator shall be final and binding.

At the arbitration, both parties agreed that the issue before the arbitrator was whether defendant Camden County Municipal Utilities Authority (CCMUA) violated "the contract by using non-dewatering machine operators to perform the work of that classification and if so, what shall be the remedy?"

The arbitrator found that the employer could show no overlap of duties between the sewage plant operator job classification and the sludge dewatering operator job classification and concluded that the sewage plant operators were assigned out-of-title tasks. Therefore, the arbitrator issued an order to the employer requiring it to cease and desist from assigning sewage plant operators to work normally performed by sludge dewatering machine operators, and to provide access to records to allow the parties to calculate the amount of overtime lost by the sludge dewatering machine operators. The arbitrator also required the amount due to be divided equally among all sludge dewatering machine operators eligible to perform overtime work. Following a period of discovery and negotiations concerning the amount due, a final award of $21,318.22, divided equally among the twelve eligible operators, was entered.

Local 32 filed a complaint in Superior Court to confirm the award. The CCMUA filed an answer and counterclaim to vacate the award. The judge held that back pay is unavailable when the contract does not provide for this remedy. Following the issuance of the decision in *State, Dep't of Corr. v. Int'l Fed'n of Prof'l and Technical Eng'rs, Local 195*, 169 *N.J.* 505, 780 *A.*2d 525 (2001) (*International Federation*), Local 32 moved for reconsideration. The judge granted reconsideration and confirmed the arbitration award because the CCMUA consented to the award of back pay. It is from this order that the CCMUA appeals.[1]

In *International Federation*, the Court addressed the appropriate remedy in a public sector labor dispute. The arbitrator found that corrections officers had been improperly denied overtime in violation of a collective negotiations agreement and awarded back pay. *Id.* at 510, 780 *A.*2d at 528. The contract expressly authorized back pay as a remedy for a contract violation. *Id.* at 511, 780 A.2d at 529. In resolving the case, the Court was confronted with the "no work, no pay" rule. *Id.* at 510, 780 A.2d at 527.

The CCMUA argues that back pay is not a remedy for a breach of a collective bargaining agreement when the agreement does not expressly allow such a remedy. It contends that *International Federation, supra,* merely allows parties to a public sector collective bargaining agreement to negotiate this remedy as a term and condition in future labor contracts. It further disputes that it reached any agreement to compensate the operators following the arbitrator's initial award; it contends it simply followed the mandate of the initial award. Finally, it contends that the *International Federation* ruling should not be applied retroactively to this case. It characterizes this ruling as a "sea change . . . in the field of public sector labor law."

---

[1] The initial notice of appeal was filed by Local 32. When its motion for reconsideration was granted, the CCMUA filed a notice of appeal which was treated as a cross-appeal. By order dated November 26, 2001, we granted Local 32's motion for temporary remand *nunc pro tunc*, dismissed its appeal, and directed that the CCMUA cross-appeal be considered a timely notice of appeal.

Local 32 responds that the arbitrator had the authority to order a back pay remedy. Furthermore, it argues that *International Federation* governs the resolution of the issue of the availability of back pay as a remedy for a contract violation in appropriate cases and further contends that the opinion clarifies rather than changes the law on this issue. Local 32 also insists that the CCMUA is collaterally estopped from contesting the authority of an arbitrator to award back pay because it failed to contest such an award by another arbitrator in a prior grievance.

When the remedy fashioned by the arbitrator in a public sector labor dispute is challenged, a reviewing court engages in a three tier analysis. First, we must inquire whether the contract gave the arbitrator the authority to award back pay. *International Federation, supra,* 169 *N.J.* at 515–16, 780 *A.*2d at 531; *Communications Workers, Local 1087 v. Monmouth County Bd. of Soc. Servs.,* 96 *N.J.* 442, 448, 476 *A.*2d 777, 779–80 (1984). Second, we must determine whether the arbitrator's action conforms with applicable law. *International Federation, supra,* 169 *N.J.* at 516, 780 *A.*2d at 531; *Communications Workers, supra,* 96 *N.J.* at 450, 476 *A.*2d at 781. Third, we must decide whether the arbitrator's action conforms with public policy. *Ibid.*

Here, the collective bargaining agreement, unlike the contract in *International Federation,* does not expressly authorize the arbitrator to award back pay for any contract violation or, as in *Communications Workers,* allow a back pay award in carefully circumscribed situations. Although *International Federation* primarily concerns the "no work, no pay" rule, it strongly suggests that the presence of language specifically authorizing a back pay remedy should not be determinative of the scope of the arbitrator's authority. The Court recognized that leading commentators "suggest that [a back pay] award may have been permissible even without that contractual authorization." *International Federation, supra,* 169 *N.J.* at 522, 780 *A.*2d at 535. Moreover, in commenting on the ruling in *Communications Workers,* which barred a back pay remedy to employees who were impermissibly

barred from a promotion, the Court reflected that "a fair reading of that opinion reveals that the interdiction against back pay flowed not from the absence of a specific statement of remedy available for each and every breach, but from a contract provision that specifically prohibited back pay in the circumstances presented." *International Federation, supra,* 169 *N.J.* at 518, 780 *A.*2d at 533. Thus, as to the first tier of our inquiry, we decline to hold that the absence of express language in the collective bargaining agreement should preclude a back pay remedy in the appropriate case. Furthermore, the submission to the arbitrator by both parties of the question of an appropriate remedy suggests that the employer did not consider the absence of language expressly authorizing a back pay remedy as a limitation on the arbitrator's authority.

Our next inquiry is whether the back pay award is permitted by law. In *International Federation, supra,* the Court clarified that the "as permitted by law" language, which commonly appears in collective bargaining agreements in the provision describing and limiting the authority of the arbitrator, means that the remedy cannot be prohibited by law. *International Federation, supra,* 169 *N.J.* at 522, 780 *A.*2d at 535. Here, the CCMUA has not identified any statute or regulation which prohibits the award of back pay in a situation in which an employer has deprived employees of overtime work contrary to the express terms of the collective bargaining agreement.

The final inquiry is whether an award of back pay to employees who should have been but were not assigned to overtime violates the public policy of this State, the so-called "no work, no pay" rule. In *International Federation,* the Court abolished the rule. *Id.* at 540, 780 A.2d at 547. It recognized that the original rationale of the rule is inapposite in circumstances such as this case in which the relationship between the public employees and their public employer is governed by a collective bargaining agreement. *Id.* at 534–36, 780 *A.*2d at 543–45. Moreover, back pay awards and an effective grievance and arbitration procedure are

essential to stability in labor relations. *Id.* at 537, 780 *A.*2d at 545. Justice Zazzali wrote:

Awards of back pay are also essential to stability in labor relations. . . .

We further note that stability of labor relations, "industrial peace" as it is termed in the private sector, depends largely on collective negotiations agreements. And the heart of any such agreement is the grievance and arbitration procedure. That is the mechanism for resolving violations of the collective negotiations agreement. Because employees do not have the right to strike in the public sector under our common law, *Bd. of Educ. v. New Jersey Educ. Ass'n,* 53 *N.J.* 29, 36, 247 *A.*2d 867[, 871] (1968), and because most agreements in the private sector prohibit strikes over contract violations, arbitration rights and remedies must be effective if we are to preserve labor peace. Otherwise, the resultant agreements and the incorporated arbitration remedies would become meaningless.

Just as good labor management relations depend on collective negotiations agreements that contain effective arbitration provisions (in lieu of the right to strike), in turn the usefulness of the arbitration provisions depends on effective remedies when the contract is violated if the contract is to provide stability. If we prohibit an arbitrator from awarding back pay, we eviscerate the contract. Back pay is the lifeblood of any arbitration procedure because without back pay there is only a right without a remedy. In the context of labor relations, the lack of a remedy presents a substantial threat to a peaceful and productive workplace. Such protections are necessary if the "quality and morale of public officers and employees [is to] improve[ ]." [Note, *The Right of New Jersey's Governmental Officers and Employees to Recover for Back Pay when Illegally Dismissed or Suspended,* 15 *Rutgers L.Rev.* 516, 532 (1961)].

[*Id.* at 537–38, 780 A.2d at 545.]

The CCMUA argues, however, that the *International Federation* rule should not be applied retroactively. It contends that the rule changes the law and that it relied on the rule established in *Communications Workers.* Local 32 argues that *International Federation* governs this case. It contends that *International Federation* does not change the law because the "no work, no pay" rule never applied to public employees governed by a collective bargaining agreement. In the alternative, Local 32 argues that the CCMUA cannot establish that it relied on the "no work, no pay" rule because it submitted the issue of remedy to the arbitrator and had accepted an award in the past which required the payment of back pay.

In the event a judicial decision announces a new rule, the court commonly addresses the retroactive effect of the rule. *See Olds v.*

*Donnelly,* 150 *N.J.* 424, 449–50, 696 *A.*2d 633, 646 (1997); *Crespo v. Stapf,* 128 *N.J.* 351, 367–74, 608 *A.*2d 241, 249–53 (1992); *Rutherford Educ. Ass'n v. Bd. of Educ. of Rutherford,* 99 *N.J.* 8, 20–31, 489 *A.*2d 1148, 1154–60 (1985). In *State v. Knight,* 145 *N.J.* 233, 249, 678 *A.*2d 642, 650–51 (1996), the Court explained that a new rule may be applied purely prospectively, prospectively and in the case before the Court, retroactively to pending cases, or retroactively to all cases, even in those cases in which final judgment has been entered. In *Olds v. Donnelly, supra,* the Court addressed the considerations which should inform the effect of a decision. The Court stated:

> Ordinarily, judicial decisions apply retroactively. *Crespo v. Stapf,* 128 *N.J.* 351, 367, 608 *A.*2d [at 250] (1992). Policy considerations may justify giving a decision limited retroactive effect. *Ibid.* The first consideration is whether litigants reasonably have relied on settled law in ordering their affairs. *Id.* at 368, 608 *A.*2d [at 250]. Another consideration is whether retroactive application will advance the purposes of the rule announced in the decision. *Id.* at 370, 608 *A.*2d at [, 251]. "The final consideration is whether retroactive application would produce inequitable results and adversely affect the administration of justice." *Id.* at 371, 608 A.2d [at 252].
>
> [150 *N.J.* at 449, 696 *A.*2d [at 646].]

We do not interpret *International Federation* to establish a new rule of law. To be sure, the opinion concluded with the statement, "we abolish the no work, no pay common law rule." *International Federation, supra,* 169 *N.J.* at 540, 780 *A.*2d at 547. However, when the opinion is examined in its entirety, we conclude it clarifies *Communications Workers.* For example, the Court observed that the Court in *Communications Workers* "merely recognized the existence of the no work, no pay doctrine. It did not decide whether the public policy underlying the doctrine precluded recovery of back pay because the contract did not provide for that recovery." *Id.* at 533, 780 *A.*2d at 543. Indeed, Justice Zazzali emphasized that the result in *Communications Workers* can be explained by the language of the contract which omitted the contract violation in that case from the list of circumstances which would qualify for an award of back pay. *Id.* at 518, 780 *A.*2d at 532. Moreover, the Court suggested that the rule was confined

solely to those whose public employment was not governed by a collective negotiations agreement. *Id.* at 535–36, 780 *A.*2d at 544.

Even if we were to hold that *International Federation* announced a new rule, the circumstances in this case would not warrant alteration of the usual rule that decisions are applied retroactively. Here, the parties submitted the question of an appropriate remedy to the arbitrator. Furthermore, the employer, having acquiesced to a back pay award in similar circumstances in the past, cannot demonstrate reliance on the so-called established "no work, no pay" rule.

In summary, we conclude that the arbitrator did not exceed his authority by awarding back pay. The failure of the collective bargaining agreement to specifically authorize a back pay remedy did not preclude such an award. Furthermore, the remedy is permitted by law and not contrary to public policy. The November 2, 2001 order granting Local 32's motion for reconsideration is affirmed.

Affirmed.